Linda Lee AMARANTE, Appellant,

v.

ROSENBERG, District Director, Immigration and Naturalization Service, Appellee.

No. 18659.

United States Court of Appeals
Ninth Circuit.

Jan. 2, 1964.

Sidney M. Kaplan and Sidney Broffman, Los Angeles, Cal., for appellant.

Francis C. Whelan, U. S. Atty., Donald A. Fareed, Asst. U. S. Atty., Chief Civil Section; and Dzintra I. Janavs, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before CHAMBERS and HAMLEY, Circuit Judges, and JAMESON, District Judge.

JAMESON, District Judge:

This is an action for declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201, and for review under the Administrative Procedure Act, 5 U.S.C. § 1009.

Appellant is a native born citizen of the United States. Her husband, Daniel Fraga de Amarante, is an alien, a native and citizen of Portugal. He last entered the United States as a visitor on January 13, 1959. On September 3, 1959, he married a United States citizen, who is referred to as his "first wife". On December 7, 1959, his first wife filed with the Immigration and Naturalization Service Form I–130, "Petition to Classify Status of Alien for Issuance of Immigrant Visa," seeking to classify her beneficiary husband as a nonquota immigrant.[1] At the same time Mr. Amarante filed Form I-485, "Application for Status as Permanent Resident".

The first wife's petition was approved on January 26, 1960, by the District Director of the Immigration and Naturalization service. No action was ever taken

---

1. 8 U.S.C. § 1101(a) (27) (A) provides that, "The term 'nonquota immigrant' means—(A) an immigrant who is the child or spouse of a citizen of the United States."

approving Amarante's application for status as a permanent resident.

On July 14, 1961, the first wife was notified that the approval of her petition was revoked because it had been determined that her marriage to Mr. Amarante was not bona fide. Upon an administrative appeal, the revocation was sustained. Mr. Amarante was notified that his application for status as a permanent resident was denied, because the approval of his first wife's petition was revoked and there was no visa "immediately available" to him. The marriage to the "first wife" was annulled, and Amarante married appellant.

On January 12, 1962, appellant filed Form I-130, "Petition to Classify Status of Alien for Issuance of Immigrant Visa," and Mr. Amarante again filed Form I-485, "Application for Status as Permanent Resident". The District Director denied appellant's petition on February 5, 1962. On appeal the Board of Immigration Appeals (in a three to two decision) dismissed the appeal on the ground that the petition could not be approved because the alien (Mr. Amarante) had previously been "accorded" a nonquota status when his first wife's petition was approved.

The question for determination is whether Amarante was "accorded" a nonquota immigrant status within the meaning of 8 U.S.C. § 1155(c) (§ 205 of the Immigration and Nationality Act of 1952, as amended by § 10 of the Act of September 26, 1961) when the Attorney General approved his first wife's petition.

8 U.S.C. § 1155 provides in pertinent part:

"Any citizen of the United States claiming that any immigrant is his spouse * * * and that such immigrant is entitled to a nonquota immigrant status under section 1101 (a) (27) (A) of this title, * * * may file a petition with the Attorney General. * * * The petition shall be in such form and shall contain such information and be supported by such documentary evidence as the Attorney General may by regulations prescribe. * * *

"After an investigation of the facts in each case the Attorney General shall, if he determines the facts stated in the petition are true and that the alien in respect of whom the petition is made is eligible for a nonquota immigrant status under section 1101(a) (27) (A) of this title, * * * approve the petition and forward one copy thereof to the Department of State. * * * The Secretary of State shall then authorize the consular officer concerned to grant the nonquota immigrant status * * *. Notwithstanding the provisions of this subsection, no petition shall be approved if the alien previously has been accorded, by reason of marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws—

"(1) a nonquota status under section 1101(a) (27) (A) of this title as the spouse of a citizen of the United States, * * *."

Appellant contends that the approval of the spouse's petition by the Attorney General determines *eligibility* for status but does not *accord* status, and that status is not accorded until the consular officer *grants* the "nonquota immigrant status". Appellee contends that the approval of the wife's petition by the Attorney General in itself accords the nonquota status and that the Secretary of State's function through the consular service is purely ministerial. Accordingly, it is argued that the approval of the first wife's petition, even though subsequently revoked, and even though the husband's application had never been approved, accorded status to the husband, and that this petition is barred.

The precise issue may be clarified by brief reference to the procedures available to the alien when the petition (Form I-130) is filed by the spouse, pursuant to § 205 of the Act (8 U.S.C. § 1155). If the alien is outside the United States, he applies for a nonquota visa before a

United States Consul, who has been informed of the approval of Form I–130 by the Attorney General. If the alien is within the United States, he may either (a) depart from the United States, appear before a United States Consul and apply for a visa, or (b) apply to the Attorney General of the United States under section 245 of the Act (8 U.S.C. § 1255)[2] for adjustment of his status as a permanent resident. This application may be filed at the same time as the petition of the spouse under section 205. If the Attorney General adjusts his status to that of a permanent resident under section 245, it is equivalent to the issuance of a visa by a United States Consul outside the United States.[3]

▮ The parties agree that when the alien seeks an adjustment of his status by the Attorney General under section 245, the Attorney General performs the same functions as does a consular officer when the alien is seeking to enter the country and applies for a nonquota visa. Accordingly, it is appellant's position that when the consular officer acts favorably on a visa or when the Attorney General acts favorably on an application for adjustment of status, the alien is thereby accorded his status, and not when the petition of the spouse is approved.

▮ We agree. Construing the act in its entirety, it is apparent that the consular officer (or Attorney General under section 245) must finally determine whether the nonquota status will be granted. Prior to granting the alien's application, the Attorney General must have approved the spouse's petition to establish the eligibility of the alien for status.

2. 8 U.S.C. § 1255 provides in pertinent part:

"(a) The status of an alien * * * who was inspected and admitted or paroled into the United States may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible

This conclusion is supported by other provisions of the Act and by pertinent regulations.

Section 224 of the Act (8 U.S.C. § 1204) provides:

"A *consular officer may*, subject to the limitations provided in sections 1154, 1155 and 1201 of this title, *issue an immigrant visa* to a *nonquota immigrant* as such *upon satisfactory proof*, under regulations prescribed under this chapter, *that the applicant is entitled to a nonquota immigrant status*." (Emphasis added.)

Section 245(a) of the Act (8 U.S.C. § 1255(a), Note 2, supra) provides that "the status of an alien * * * who was inspected and admitted or paroled into the United States may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence * * *" The alien's status as a nonquota immigrant is accorded by this adjustment of status by the Attorney General pursuant to section 245, and not by his approval of the spouse's petition pursuant to section 205.

22 C.F.R. § 42.10 reads in part:

"An applicant for an immigrant visa shall be presumed to be a nonpreference quota immigrant *until he establishes to the satisfaction of the consular officer* that he is entitled to * * * nonquota status * * * The consular officer is authorized to require such evidence, in *addition to compliance with petition approval requirements* prescribed by statute, as he shall consider necessary to es–

to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is approved."

3. Prior to the enactment of the Immigration and Nationality Act of 1952, incorporating the provisions of § 245, the alien was required to leave the country, apply to a consular office for a visa, and reenter the country.

tablish that the applicant is in fact entitled to the status claimed."

22 C.F.R. § 42.40 provides:

"*Consular officers* are authorized * * * to *grant*, upon receipt of, and within the validity period of, a petition filed with and approved by the Immigration and Naturalization Service, the nonquota * * * status indicated in the petition. The approval of the petition shall have the effect of establishing prima facie that the alien is entitled to the classification approved in the petition. The approval of a petition by the Immigration and Naturalization Service *shall not relieve the alien of the burden of establishing to the satisfaction of the consular officer that he is eligible in all respects to receive a visa.*"[4] (Emphasis added.)

■ The foregoing language is inconsistent with the contention that the consular officer's function is merely ministerial. The Regulations are consistent with our conclusion that the Attorney General's approval of the citizen spouse's petition merely establishes the eligibility for status, which may then be granted upon the application of the alien. Final authority rests with the consular officer (or Attorney General under section 245), who grants the alien's application and actually accords the nonquota status.

Appellee argues further that Congressional intent to discourage sham marriages would be frustrated by equating "grant" with "accord" and holding that the nonquota status is accorded by the action of the consular officer. Before the consular officer (or Attorney General under § 245) may exercise his discretion in granting and according status, however, the Attorney General must first de-

termine eligibility, and in so doing determines whether there is a bona fide marriage. In this case had the initial investigation disclosed that Amarante's marriage to the first wife was a sham, the first wife's petition would have been denied. Had this occurred, obviously there would be no bar to the present petition. The fact that the first wife's petition was approved and then revoked places the present spouse and the alien himself on exactly the same basis as though the first wife's petition had been denied.

The judgment is reversed and the cause remanded for judgment consistent with this opinion.

---

4. The district court concluded that these regulations "are in error to the extent that they indicate that the Secretary of State has a hand in the determination of nonquota status", and that "under 8 U.S.C. 1155 (§ 205 of the Act) the discretion of the Secretary of State was to be employed in cases where the beneficiary was outside the United States when the petition in his or her behalf was made". Appellee does not here contend, however, that the regulations are in error, and as noted supra, concedes that the function of the Attorney General under § 245 is exactly the same as that of the consular officer under § 205.