Mary Moore **AALUND** et al., Plaintiffs-Appellants,

v.

E. Dewitt **MARSHALL**, District Director of Immigration and Naturalization, et al., Defendants-Appellees.

No. 71–1927

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

March 7, 1972.

---

* ▓ Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir., 1970, 431 F.2d 409.

Alto V. Watson, Beaumont, Tex., for plaintiffs-appellants.

Roby Hadden, U. S. Atty., Robert H. Nicholas, Jr., Asst. U. S. Atty., Beaumont, Tex., for defendants-appellees.

Before JOHN R. BROWN, Chief Judge, and INGRAHAM and RONEY, Circuit Judges.

John R. BROWN, Chief Judge:

Mary Moore Aalund, an admitted "deportable alien" under Section 241(a) (2) [1] of the Immigration and Naturalization Act, seeks to have her deportation forestalled and permission to depart this country voluntarily allowed by this appeal from the denial of habeas corpus relief.[2] Given the very limited review permitted in this Court over this type of action, we must affirm the District Court, 323 F.Supp. 1380.

Petitioner does not contest the finding that she is a deportable alien. Her sole request is that she be granted the discretionary privilege of voluntary departure in lieu of deportation. Thus, at the outset, we must recognize that, "Judicial review of discretionary administrative action is limited to the questions of whether the applicant has been accorded procedural due process and whether the decision has been reached in accordance with the applicable rules of law. Furthermore, the inquiry goes to the question whether or not there has been an exercise of administrative discretion and, if so, whether or not the manner of exercise has been arbitrary or capricious." Jarecha v. I. N. S., 5 Cir., 1969, 417 F.2d 220, 224; Kam Ng v. Pilliod, 7 Cir., 1960, 279 F.2d 207, 210, cert. denied, 1961, 365 U.S. 860, 81 S.Ct. 828, 5 L.Ed.2d 823.

### Procedural Due Process

Mrs. Aalund's first attack on the decision not to allow her the privilege of voluntary departure is that she was not informed of what she would have to show in order to obtain that discretionary relief. Specifically, she asserts that she was given no notice that her past meretricious relationship with a married man who fathered her three children born out of wedlock, would be in issue.

To comprehend the thrust of this argument, it is necessary to understand precisely what Petitioner had to show at the hearing. Voluntary departure in lieu of deportation is administrative discretionary relief allowed under 8 U.S.C. A. § 1254(e) if the alien can "establish * * * that he is, and has been, a person of good moral character for at least five years immediately preceding his application for voluntary departure * * * ." The definition of "good moral character" is set forth in 8 U.S.C.A. § 1101(f) (2) and includes "one who during such [five year] period has [not] committed adultery." [3]

---

1. 8 U.S.C.A. § 1251(a) (2).

2. This procedure is outlined in 8 U.S.C.A. § 1105a(a) (9). It provides an alternative to direct appeal to the Court of Appeals from an adverse decision of the Board of Immigration Appeals, provided by 8 U.S.C.A. § 1105a(a) (1), (2), (3) and (4).

3. Actually 8 U.S.C.A. § 1101(f) provides:
    "(f) For the purposes of this chapter—
    No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was—
    *     *     *     *     *
    (2) one who during such period has committed adultery;"

The INS attorney came to the hearing well prepared to resist any request for discretionary relief with evidence that Mrs. Aalund had not lived a life guided by the principles of Victorian morality. His evidence showed that Mrs. Aalund, never married, was the mother of three children—all the offspring of Mr. Carl Aalund, a man entangled in an apparently unhappy state of wedlock to another woman at the time.

Before Mrs. Aalund had even suggested that she might be entitled to voluntary departure, the INS attorney moved to foreclose that avenue to discretionary relief by presenting evidence of the allegedly illicit relationship, complete with all the details. Mrs. Aalund urges that she can rebut this evidence and show that the relationship was not really adulterous at all (a theory discussed below) but that she was unprepared to do so at the hearing because she had received no notice that the matter would even be in issue.

It is undisputed that once an alien has been admitted to lawful residence in the United States and remains physically present here, "not even Congress may expel him without allowing him a *fair* opportunity to be heard." Kwong Hai Chew v. Colding, 1953, 344 U.S. 590, 597–598, 73 S.Ct. 472, 478, 97 L.Ed. 576, 584 (Emphasis added). It is likewise axiomatic that adequate notice is the first and foremost prerequisite of a fair hearing. Dixon v. Alabama State Board of Education, 5 Cir., 1961, 294 F.2d 150, cert. denied, 1961, 368 U.S. 930, 82 S.Ct. 368, 7 L.Ed.2d 193; In re Oliver, 1948,

333 U.S. 257, 273, 68 S.Ct. 499, 507, 92 L.Ed. 682, 694. Indeed, the Immigration and Naturalization Act on its face requires that "the alien shall be given notice, *reasonable under all the circumstances,* of the nature of the charges against him and of the time and place at which the proceedings will be held." 8 U.S.C.A. § 1252(b) (1) (emphasis added). The question then becomes whether or not the notice in this case was "reasonable under the circumstances."

There is no dispute that the show cause order plainly set forth the specific charge upon which deportation proceedings were predicated.[4] Moreover, the reverse side of the Notice of Hearing specifically stated, "You may apply at the hearing for voluntary departure in lieu of deportation." Mrs. Aalund's contention is that this did not apprise her of the specific showing she would have to make to be entitled to voluntary departure, and more particularly that she was not informed that "adultery" would be an issue.

There is no requirement, either statutory or constitutional, that all possible defenses or collateral remedies be explained to one being proceeded against by Governmental action. To demand any such all-inclusive notice would be completely unmanageable, since the variety of defenses and strategies is innumerable. All that is required is that the Government inform the accused of the specific allegations, which, if proved, would justify the action sought to be taken. And that is precisely what the Notice in the present case did, setting

---

4. In essence, the Notice provided:
"UPON inquiry conducted by the Immigration and Naturalization Service, it is alleged that:
1. You are not a citizen or national of the United States;
2. You are a native of Northern Ireland and a citizen of The United Kingdom
3. You entered the United States at Noyes, Minnesota on or about April 3, 1968.
4. You were admitted as a visitor for a temporary period until July 3, 1968;

5. You were granted until January 8, 1969 in which to depart from the United States;
6. You have remained in the United States beyond January 8, 1969 without authority.
AND on the basis of the foregoing allegations, it is charged that you are subject to deportation pursuant to the following provisions of law:
Section 241(a) (2) of the Immigration and Nationality Act, in that, after admission as a nonimmigrant under Section 101(a) (15) of said Act, you have

out the specific reasons why, the Government asserted, Mrs. Aalund was an alien subject to deportation. Selection of an appropriate "defense" was, and must be, left completely to the individual.

It might have been better for the Show Cause Order to have contained an additional sentence to the effect that, "You are informed that the Immigration and Naturalization Service will oppose any request for voluntary departure on grounds that under 8 U.S.C.A. § 1101(f)(2) you are ineligible for such discretionary relief by virtue of past adulterous conduct with Mr. Carl Aalund." But we can find no authority for holding such detail in the notice to be statutorily or constitutionally mandated.

### Adultery

▉ The Special Inquiry Officer of the INS denied discretionary relief specifically because of the past adulterous relationship between Petitioner and Carl Aalund. Petitioner now claims that the Inquiry Officer applied the legal standard incorrectly in determining that Mrs. Aalund had committed adultery. Recognizing that there is no Federal defini-

tion of adultery,[5] the Special Inquiry Officer apparently applied the Texas Penal Code definition [6] to the facts of this case. Petitioner argues that under Texas law, a single act of carnal knowledge is insufficient to constitute adultery unless the parties are "living together," (which they were not in this case). The argument is that since the evidence—one child born out of wedlock [7] and admittedly fathered by a married man—shows only a *single* act of carnal knowledge, which would be insufficient to establish a violation of Texas law, the Inquiry Officer must have applied Texas law incorrectly in denying discretionary relief.

This argument misses the point. The burden was not on the Government to prove adultery (Mrs. Aalund was charged with being deportable for having overstayed her visa), it was on Mrs. Aalund to demonstrate in effect that she had *not* committed adultery, and was therefore not disqualified from discretionary relief. With the evidence that Mrs. Aalund had borne three children out of wedlock, the Inquiry Officer was quite justified in holding that Mrs. Aalund had not discharged her burden of showing that she had not committed adultery.[8]

remained in the United States for a longer time than permitted."

5. But see In re Schroers, S.D.N.Y., 1971, 336 F.Supp. 1348. In *Schroers*, the District Court, recognizing the absence of a Federal definition of adultery, and suggesting that Congress and the Constitution favor uniformity over divergent requirements depending upon which state the alien lives in, set out to announce a national standard of adultery. The Court concluded that, for purposes of the Immigration and Naturalization Act, the term "adultery" refers to extra-marital intercourse which tends to destroy an existing, viable marriage and which would represent a threat to public morality.

We need not determine at this time whether this or the Texas definition should apply to the present case, because, as discussed in text, *infra*, no matter which definition is utilized, it is apparent that Petitioner has not discharged her burden of proving that she had not committed adultery.

6. " 'Adultery' is the living together and carnal intercourse with each other, or habitual carnal intercourse with each other without living together, of a man and a woman when either is lawfully married to some other person."
Vernon's Tex. Penal Code Ann. art. 499.

7. The first two children were born while Mrs. Aalund was still living in Great Britain, before she came to the United States. Since "adultery" is not prohibited under British law and since, in all events, the children are more than five years old, their ancestry could not be an issue in the present proceedings. Thus, only the birth of the last child can be considered as evidence of whether or not Mrs. Aalund has committed adultery in the last five years.

8. The argument that a conviction for adultery is required to preclude discretionary relief is equally without merit. See Talavera v. Pederson, 6 Cir., 1964, 334 F.2d 52, 57. Several other sections

**714**

### De Facto Deportation
### of an American Citizen

 The last argument made by the Petitioner is that the ruling of the Inquiry Officer was capricious and arbitrary because he did not take into consideration, in passing upon the question of discretionary relief, the fact that deportation of Mrs. Aalund would necessarily entail a de facto deportation of her infant child, who is unquestionably an American citizen, but who would be required to leave this country with his mother, which would allegedly result in "extraordinary and unusual hardship."

The difficulty with this argument is that, even assuming arguendo that the Inquiry Officer did not in fact "consider" the effect of his order on the minor child, had he done so, no different result could have obtained. Having determined that Mrs. Aalund had not demonstrated that she was of "good moral character," the Inquiry Officer was powerless to allow discretionary relief. Moreover, this Court has consistently rejected the argument that a de facto deportation of minor children voids the underlying deportation order of the parent or renders it arbitrary or capricious. See, Perdido v. I. N. S., 5 Cir., 1969, 420 F.2d 1179; Dayao v. Staley, 5 Cir., 1970, 424 F.2d 1131. Accord, Mendez v. Major, 8 Cir., 1965, 340 F.2d 128; Braude v. Wirtz, 9 Cir., 1965, 350 F.2d 702; Helton v. Staley, S.D.Tex., 1969, No. C.A. 68–H–741, July 10, 1969; Gras v. Beechie, S.D.Tex., 1963, 221 F.Supp. 422.

We emphasize that our role in this type of proceeding is not to consider the fundamental fairness of the result, but only to consider the underlying fairness of the hearing in terms of the statutory scheme and the constitution. We conclude that the notice was adequate, that the Special Inquiry Officer did not apply the legal standard erroneously, and

of 8 U.S.C.A. § 1101(f) require convictions to destroy the presumption of good moral character. See, § 1101(f) (5), (7) and (8). The fact that Congress did not

that the denial of discretionary administrative relief was not the result of capriciousness or arbitrariness. Habeas corpus relief must therefore be denied.

The keys to the kingdom are not in the Judges' hands—at least not all of them. Here they are first primarily with the Congress and next with the administrators.

Affirmed.

require a *conviction* for adultery to negate a finding of good moral character disposes of this argument.