Catalina Montano De FIGUEROA,
Petitioner,

v.

IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.

No. 73-1830.

United States Court of Appeals,
Seventh Circuit.

Argued April 17, 1974.

Decided Aug. 8, 1974.

Joseph B. Gilbert, Chicago, Ill., for petitioner.

John L. Murphy, Chief, Crim. Div., Mary Jo Grotenrath, Atty., U. S. Dept. of Justice, Washington, D. C., James R. Thompson, U. S. Atty., Chicago, Ill., for respondent.

Before SWYGERT, Chief Judge, FAIRCHILD and CUMMINGS, Circuit Judges.

SWYGERT, Chief Judge.

This is a review of an order of deportation.

Pursuant to a petition filed under provisions of section 106(a) of the Immigration and Nationality Act, 8 U.S.C. §

1105a(a), we review an order of deportation issued against the petitioner by the Immigration and Naturalization Service.

Petitioner Catalina Montano De Figueroa, a native and citizen of Mexico, entered the United States in March 1970 at Chicago as a visitor for pleasure and was authorized to remain in the United States until September 21, 1970. Having remained in the United States beyond that date, she was served with an order to show cause in a deportation proceeding and given notice of a hearing scheduled for February 25, 1972. The hearing did not occur. After posting bond petitioner was given a voluntary departure letter requiring her to depart the United States on March 22, 1972.

On March 10, 1972 petitioner married Jose Ramon Figueroa, a United States citizen. Thereafter, on March 29 Jose Figueroa as petitioner's spouse filed a petition with the Immigration Service to accord her the status of a nonquota immigrant under section 204 of the Immigration and Nationality Act, 8 U.S.C. § 1154, and thereby qualify her for an immigrant visa under the provision of 8 U.S.C. § 1101(a)(27)(A). The Attorney General through the Immigration Service approved the petition and sent it to the American Consulate in Toronto, Canada, the port of entry where petitioner indicated she intended to apply for an immigrant visa.

On May 11, 1972 two Immigration Service investigators arrested Jose Figueroa in Chicago and obtained his signed statement in which he made the following representations. After telling him she had no immigration papers, petitioner offered him $500 if he would marry her "so she could obtain a visa." He accepted the offer and received $500. He was paid an additional $500, but, after petitioner explained that "the Immigration was looking for her," he returned the second sum because it was to be used "in case of a bond." Thereafter, on March 10, 1972 they were married, but never lived together "as man and wife."

On June 8, 1972 the surety on the bond was notified to surrender petitioner at the Immigration office in Chicago on August 1. On that date a hearing was conducted by a special inquiry officer. Shortly thereafter the special inquiry officer rendered his decision. He found from "believable testimony" that petitioner's marriage had been entered into "merely for the purpose of circumventing the immigration laws" and that she had given false testimony at the hearing about her marital relationship with Jose Figueroa. The officer decided that petitioner, having failed to establish a good moral character as required by statute, did not qualify for the privilege of voluntary departure in lieu of deportation. The petitioner was ordered deported from the United States to Mexico. The Bureau of Immigration Appeals affirmed and this petition to review followed.

I

The show cause order issued in February 1972 charged the petitioner as deportable pursuant to section 241(a)(2) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(2), in that after admission as a nonimmigrant under section 101(a)(15) of the Act, 8 U.S.C. § 1101(a)(15), she remained in the United States for a longer time than permitted. At the deportation hearing, counsel for petitioner admitted "for the sake of the record" her deportability on the "charges specified," and then asked that she be given the privilege of voluntary departure at her own expense in lieu of deportation. Although this was the apparent issue, the real issue, as stated by the special inquiry officer, was whether petitioner was subject to deportation under the laws of the United States.

Petitioner contends it was error to decide she was deportable since a petition to accord her the status of a nonquota immigrant under section 205 had been approved by the Attorney General. Although this circuit has not previously spoken on the question, we are persuaded to hold that an approval of a petition

under this statutory provision does not alone give the beneficiary of the petition an immediate right to an immigrant visa. *See* Amarante v. Rosenberg, 326 F.2d 58 (9th Cir. 1964) and Scalzo v. Hurney, 225 F.Supp. 560 (E.D.Pa.1963). The beneficiary is required if out of the country to request an immigrant visa from a United States consular officer at the port of entry. The approved petition is merely prima facie evidence of qualification for issuance of the visa. The visa may be issued only if the consular officer concludes that the alien is fully qualified under the immigration laws for the visa. The immigration officer who inspects the alien upon his arrival must be satisfied that the alien is admissible for permanent residence. If the alien is already living in the United States, he may under certain circumstances, apply under section 245 of the Act, 8 U.S.C. § 1255, for adjustment of his status to that of a permanent resident and avoid the necessity of leaving the country to apply for a visa. Such adjustment, however, also requires an inspection process before the application may be approved. Since no immigrant visa had been issued to petitioner at the time of her hearing, it is clear that the mere petition for a visa in her behalf did not affect her deportability.

## II

Petitioner attempts to avoid the foregoing conclusion by contending that even though no immigrant visa had been issued, her husband's petition under section 205 mooted the charge contained in the order to show cause. An additional fact must be noted in order to consider this contention. On August 1, 1972, while being held by the Immigration Service agents, Jose Figueroa signed a withdrawal of the petition he had filed on March 29, 1972. Accordingly, at the time of the deportation hearing the order to show cause had not been superseded, as petitioner argues, by an approved petition to accord her the status of a nonquota immigrant.

Petitioner argues, however, that the withdrawal of the petition was accomplished by the agents after subjecting her husband to duress by virtue of his arrest and that in any event, the provisions of the immigration regulations were not followed with respect to the withdrawal of the petition.[1]

---

1. The pertinent regulations read:

PART 205—REVOCATION OF APPROVAL OF PETITIONS

Sec.

205.1 Automatic revocation.
205.2 Revocation on notice.
205.3 Procedure.

Authority: The provisions of this Part 205 issued under secs. 101, 103, 201, 203, 204, 205, 212, 66 Stat. 166, 173, 175, 178, 179, 180, 182; 8 U.S.C. 1101, 1103, 1151, 1153, 1154, 1155, 1182.

§ 205.1 Automatic revocation.

The approval of a petition made under section 204 of the Act and in accordance with Part 204 of this chapter is revoked as of the date of approval if any of the following circumstances occur before the beneficiary's journey to the U. S. commences or, if the beneficiary is an applicant for adjustment of status to that of permanent resident, before the decision on his application becomes final:

(a) *Relative petitions.* (1) Upon formal notice of withdrawal filed by the petitioner with the officer who approved the petition.

(2) Upon the death of the petitioner or beneficiary.

(3) Upon the legal termination of the relationship of husband and wife when a petition has accorded status as the spouse of a citizen or lawful resident alien, respectively, under section 201(b), or section 203(a)(2) of the Act.

(4) Upon a child beneficiary reaching the age of 21, when he has been accorded immediate relative status under section 201(b); however, except for a native of an independent country of the Western Hemisphere or the Canal Zone, such petition is valid to accord status under section 203(a)(1) of the Act if the beneficiary remains unmarried or if he marries, such petition is valid to accord status under section 203(a)(4) of the Act for the duration of the relationship.

(5) Upon the marriage of a beneficiary accorded status as the child of a U. S. citizen under section 201(b) of the Act or status as a son or daughter of a U. S. citizen under section 203(a)(1) of the Act; however, except for a native of an independent country

The circumstances underlying the withdrawal of the petition are not properly before us for consideration. Those circumstances raised a collateral issue which is not subject to our review of the order of deportation. We say collateral because the matter relating to the approval and withdrawal of visa petitions is not within the scope of a deportation proceeding under section 242(b) of the Act, 8 U.S.C. § 1252(b), and therefore not reviewable by a court of appeals under section 106(a) of the Act, 8 U.S.C. § 1105a(a). *See* Cheng Fan Kwok v. INS, 392 U.S. 206, 88 S.Ct. 1970, 20 L.Ed.2d 1037 (1968). On this aspect of the case, we agree with the Government's statement in its brief: "The withdrawal of the visa petition is pertinent to this proceeding only in that,

under the circumstances . . , it is additional evidence that the marriage was not *bona fide.*"

With respect to petitioner's argument that the withdrawal did not comport with the regulations, a more troublesome question would be presented if we were free to consider it. The Government says that the notice of withdrawal was "duly" signed by Jose Figueroa before an officer of the Immigration Service at the same office which had approved the petition and that this "obviously" meets the requirements of 8 C.F.R. 205.-1(a)(1). We are not as sanguine as Government counsel. The regulation requires that a formal notice of withdrawal be filed with the officer "who approved the petition." A reading of the regulation indicates that the action here

of the Western Hemisphere or the Canal Zone who had been accorded status under section 201(b), the petition is valid to accord status under section 203(a)(4) of the Act for the duration of the relationship.

(6) Upon the marriage of a beneficiary accorded a status as a son or daughter of a lawful resident alien under section 203(a)(2) of the Act.

(b) *Petitions under section 203(a)(3) or (6).* (1) Upon expiration pursuant to 29 CFR Part 60 of the labor certification in support of the petition unless the certification is thereafter revalidated.

(2) Upon the death of the petitioner or beneficiary.

(3) Upon formal notice of withdrawal filed by the beneficiary with the officer who approved the petition in a third-preference case.

(4) Upon formal notice of withdrawal filed by the petitioner with the officer who approved the petition in a sixth-preference case.

(5) Upon termination of the employer's business in a sixth-preference case.

(c) [Reserved]

(d) *Notice.* When it shall appear to a district director that the approval of a petition has been automatically revoked, he shall cause a notice of such revocation to be sent promptly to the consular office having jurisdiction over the visa application and a copy of such notice to be mailed to the petitioner's last known address.

[30 F.R. 14775, Nov. 30, 1965, as amended at 32 F.R. 6260, Apr. 21, 1967; 35 F.R. 7285, May 9, 1970; 36 F.R. 2861, Feb. 11, 1971; 36 F.R. 5836, Mar. 30, 1971]

§ 205.2 Revocation on notice.

The approval of a petition made under section 204 of the Act and in accordance with Part 204 of this chapter may be revoked on any ground other than those specified in § 205.1 by any officer authorized to approve such petition when the propriety of such revocation is brought to the attention of the Service, including requests for revocation or reconsideration made by consular officers.

§ 205.3 Procedure.

Revocation of approval of a petition under § 205.2 shall be made only upon notice to the petitioner who shall be given an opportunity to offer evidence in support of the petition and in opposition to the grounds alleged for revocation of the approval. If upon reconsideration the approval previously granted is revoked, the petitioner shall be informed of the decision with the reasons therefor and shall have 15 days after the service of the notification of decision within which to appeal as provided in Part 3 of this chapter, if the petition was filed for a preference under paragraph (1), (2), (4), or (5) of section 203(a) of the Act, or for an immediate relative as defined in section 201(b) of the Act other than a child as defined in section 101(b)(1)(F) of the Act, or as provided in Part 103 of this chapter, if the petition was filed for a preference under paragraph (3) or (6) of section 203(a) of the Act, or for a child as defined in section 101(b)(1)(F) of the Act, and the consular office having jurisdiction over the visa application shall be notified of the revocation.

[37 F.R. 11470, June 8, 1972]

taken did not literally comport with the provision. However, we do not think this case should turn on the point in light of what we have said about its reviewability.

### III

■ Finally, petitioner contends that her marriage is valid under the laws of Illinois and that the marriage, in some unspecified manner, bars her deportation. The contention is not relevant since a valid marriage to a United States citizen does not of itself exempt an alien from deportation. Silverman v. Rogers, 437 F.2d 102 (1st Cir. 1970), cert. denied, 402 U.S. 983, 91 S.Ct. 1667, 29 L.Ed.2d 149 (1971). Swartz v. Rogers, 103 U.S.App.D.C. 1, 254 F.2d 338 cert. denied, 357 U.S. 982, 78 S.Ct. 1373, 2 L.Ed.2d 1372 (1958).

In summary, we think that the contentions advanced by petitioner to vacate the order of deportation are legalisms which blink the real issue, whether her marriage was in bad faith and undertaken solely to circumvent the immigration laws of the United States. On that issue we hold that subtantial evidence supports the finding of the special inquiry officer and that the Board of Immigration Appeals was correct in ruling that the marriage was a subterfuge designed to prevent deportation.

The petition for review is denied.

FAIRCHILD, Circuit Judge (dissenting).

The majority may well be correct in holding that approval of Mr. Figueroa's petition under 8 U.S.C. § 1154(a) neither vested in Mrs. Figueroa the right to a nonquota immigrant visa, nor mooted (under the circumstances here) the charge of deportability in the February 17 order to show cause. I believe, however, that due process required a fuller notice of the matters to be considered at the hearing on August 1, and therefore respectfully dissent from denial of the petition to review.

In view of the severity of the remedy, procedural fairness is essential at a hearing culminating in a deportation order. Once an alien has been lawfully admitted to the United States, " 'not even Congress may expel him without allowing him *a fair opportunity* to be heard.' Kwong Hai Chew v. Colding [344 U.S. 590, 597–598, 73 S.Ct. 472, 97 L.Ed. 576 (1953)] (Emphasis added). It is likewise axiomatic that adequate notice is the first and foremost prerequisite of a fair hearing." Aalund v. Marshall, 461 F.2d 710, 712 (5th Cir., 1972).

Petitioner and her surety received a written demand that the surety produce petitioner "for hearing" August 1, before a special inquiry officer. This document was silent as to the purpose of the hearing. At the hearing it developed that the allegations of deportability set forth in the February 17 order and the question of permitting voluntary departure would be considered and determined; that the Service regarded petitioner's marriage as a subterfuge to circumvent the immigration laws; that the Service had, on the morning of the hearing, obtained from Mr. Figueroa a revocation of the visa petition earlier filed and approved; and that Mr. Figueroa testified as a witness for the Service on the matter of the purpose of the marriage. The basis for the denial of voluntary departure is the finding that petitioner's testimony at the hearing concerning the bona fides of the marriage constituted false testimony for the purpose of obtaining benefits under the immigration laws.

Perhaps it can be parsed out that (1) the demand to the surety reasonably implied that the August 1 hearing would constitute a delayed hearing on the February 17 order to show cause; (2) that since it is now held that the approval of the visa petition is not relevant to petitioner's deportability, petitioner was not entitled to advance notice that the Service would so contend; (3) that in testi-

fying in support of voluntary departure, petitioner assumed the risk that the special inquiry officer could be convinced that her testimony was false; and (4) that she was not entitled to advance notice of the proof the Service would use to challenge her testimony in support of voluntary departure.[1]

In practical terms, however, the position of the Service concerning the marriage and the visa petition probably brought about the holding of the August 1 hearing, and dominated, if not controlled, the result. It seems to me that fundamental fairness required that petitioner be given advance notice of the position the Service would take on those matters.

---

1. Cf. Aalund, *supra*, 461 F.2d at 713.