**Derrick Barrington BROWN, Petitioner–Appellant,**

v.

**John ASHCROFT, Attorney General of the United States; James Ziglar, Commissioner of the Immigration and Naturalization Service; Edward McElroy, New York District Director of the Immigration and Naturalization Service, Respondents–Appellees.**

**Docket No. 02–2618.**

United States Court of Appeals, Second Circuit.

Argued: Oct. 30, 2003.

Decided: March 3, 2004.

---

Marsha R. Taubenhaus, New York, NY, for Petitioner–Appellant.

Megan L. Brackney, Assistant United States Attorney, New York, N.Y. (James B. Comey, United States Attorney, Kathy S. Marks, on the brief), for Respondents–Appellees.

Before: FEINBERG, KEARSE, and RAGGI, Circuit Judges.

FEINBERG, Circuit Judge.

Derrick Barrington Brown appeals from an order of the United States District Court for the Southern District of New York (John S. Martin, Jr., J.), denying his petition, filed pursuant to 28 U.S.C. § 2241, for a writ of habeas corpus. Brown claims that his right to procedural due process was violated when he was not given advance notice that the Immigration and Naturalization Service ("INS")[1] would rely on grounds other than those charged in the Notice to Appear for his removal proceedings to challenge his claim that he was eligible for discretionary relief under section 212(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(c) (1994). Brown also argues that he is not statutorily barred from seeking section 212(c) relief because at the time he was ordered removed, he had not served at least five years for one or more aggravated felonies. See id. For the reasons set

forth below, we reject Brown's arguments and affirm the order of the district court.

## I. Background

### A. Brown's Criminal History

Brown, a citizen of Jamaica, was admitted to the United States in August 1992 as a lawful permanent resident. On January 14, 1994, Brown robbed a man at knifepoint. Brown was arrested and charged for the robbery. On January 20, 1994, in the New York State Supreme Court, Bronx County, he pleaded guilty to attempted robbery in the second degree. While awaiting sentencing, Brown again attempted robbery on January 27, 1994. In February 1994, Brown pleaded guilty in the same court to a second charge of attempted robbery in the second degree. On March 1, 1994, Brown was sentenced to a one-year term of imprisonment for the first offense and a concurrent term of one to three years for the second offense and was placed in the custody of the New York State Department of Corrections.

On November 4, 1994, Brown absconded from custody. However, he was picked up the same day when he was arrested for robbery. Brown pleaded guilty to robbery in the first degree, and in September 1996 was sentenced by the New York State Supreme Court, Bronx County, to an indeterminate term of six and a half to thirteen years imprisonment. He began serving his sentence on this first degree robbery conviction on October 10, 1996.

### B. Immigration Proceedings

In April 1999, the INS served Brown with a Notice to Appear alleging that he

---

1. On March 1, 2003, the Immigration and Naturalization Service was reconstituted as the Bureau of Immigration and Customs Enforcement and the Bureau of U.S. Citizenship and Immigration Services, both within the Department of Homeland Security. Because the rulings at issue in this case were made when the agency was still the INS, we refer to it as the INS in this opinion.

was removable pursuant to section 237(a)(2)(A)(iii) of the INA, 8 U.S.C. § 1227(a)(2)(A)(iii) (Supp. IV 1998). That section provides that an alien "who is convicted of an aggravated felony at any time after admission is deportable." Id. The term "aggravated felony" includes "a theft offense ... or burglary offense for which the term of imprisonment [is] at least one year," 8 U.S.C. § 1101(a)(43)(G) (Supp. V 1999), as well as an attempt to commit such an offense, id. § 1101(a)(43)(U). The Notice to Appear relied upon Brown's two 1994 attempted robbery convictions as grounds for his removal.

At an immigration hearing in June 2000, Brown, who was represented by an accredited representative who was not a lawyer, conceded that he had been convicted of two aggravated felonies, and that he was therefore removable under section 237(a)(2)(A)(iii). Brown argued, however, that he was eligible for relief under section 212(c) of the INA. Section 212(c) has been interpreted to give aliens in deportation proceedings the right to apply for a discretionary waiver of deportation. See *Buitrago–Cuesta v. INS,* 7 F.3d 291, 292 (2d Cir.1993). The immigration judge denied Brown's application, holding that section 212(c) relief was not available to Brown because the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214, and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Division C of Pub.L. No. 104–208, 110 Stat. 3009–546, had eliminated this relief in removal proceedings. In November 2000, the Board of Immigration Appeals ("BIA") reversed the immigration judge's decision, on the ground that under *St. Cyr v. INS,* 229 F.3d 406 (2d Cir.2000), aff'd *INS v. St. Cyr,* 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), Brown, who pleaded guilty before the enactment of AEDPA and IIRIRA, was eligible to apply for section 212(c) relief. The BIA remanded Brown's case to the immigration judge.

Brown's removal proceedings resumed in February 2001. The INS argued to the immigration judge that section 212(c)'s bar to relief, which provided that discretionary relief was not available to "an alien who has been convicted of one or more aggravated felonies and has served for such felony or felonies a term of imprisonment of at least 5 years," 8 U.S.C. § 1182(c) (1994), applied to Brown. In so arguing, the INS relied not on the two 1994 convictions that were the basis for the removal proceedings, but on Brown's 1996 conviction, for which, the INS argued, Brown had served at least five years. Brown was not given any prior notice that the INS would rely on his 1996 conviction in arguing that he was ineligible for section 212(c) relief. When the immigration judge asked him whether he had been incarcerated on that charge since October 1996, Brown replied that he had. Although the time period between the October 1996 incarceration and the date of the hearing was only four years and three months, the INS contended that when Brown was put into custody on the 1996 conviction, he was credited with 705 days of jail time, making his incarceration on that conviction greater than five years. When the immigration judge asked Brown whether he was, in fact, credited with the 705 days, Brown replied that he had been. Based on that computation, the immigration judge found Brown statutorily barred from seeking section 212(c) relief and ordered him removed. Brown appealed, and on May 31, 2001, the BIA summarily affirmed the immigration judge's decision.

C. Brown's Habeas Petition

In November 2001, Brown filed the petition for writ of habeas corpus now before

us on appeal. Acting pro se, Brown made three arguments in his petition. First, he argued that under *St. Cyr*, he was eligible to apply for section 212(c) relief. Second, he claimed that he was not barred from applying for section 212(c) relief because when the INS began removal proceedings against him he had not been incarcerated for five years. Third, Brown contended that his constitutional rights were violated because he was not given notice that the INS would rely on his 1996 conviction to challenge his section 212(c) eligibility, and he therefore did not have a chance to prepare a defense.

In August 2002, the district court denied Brown's petition in a memorandum opinion. The basis of its ruling was that while Brown was entitled to seek section 212(c) relief under *St. Cyr*, he was nevertheless statutorily barred from such relief because when Brown's order of deportation became final, he had served more than five years in prison on one or more aggravated felony convictions. See *Buitrago–Cuesta*, 7 F.3d at 296 (holding that time spent in custody during the course of a hearing will be counted for purposes of rendering incarcerated alien ineligible for section 212(c) relief). The district court did not address Brown's due process argument.

Brown appealed, and in February 2003 this court sua sponte appointed counsel for him. We asked the parties to brief the issue whether Brown's due process rights were violated by the immigration judge's denial of Brown's section 212(c) application on the basis of the 1996 conviction, even though it was not charged in the Notice to Appear that the INS had served on Brown.

## II. Discussion

On appeal, Brown challenges the immigration judge's decision on the due process ground upon which we requested briefing.

In addition, Brown again argues that the statutory bar of section 212(c) does not apply to him because at the time of the removal proceedings he had not served five years on his convictions, but he relies on two new claims to support this contention. First, he argues that for the purposes of his section 212(c) eligibility his sentence should be measured as of his initial removal date, June 2000. He contends that at that time, he had not been incarcerated for at least five years on an aggravated felony conviction because 438 days of the 705 days that the immigration judge at the resumed removal proceedings in February 2001 credited to his 1996 sentence should have been credited to the 1994 sentences. This would mean that in June 2000, he would have served only 4.4 years on the 1996 sentence. Second, Brown argues that his two 1994 convictions cannot be considered aggravated felonies because under the law in force at the time Brown pleaded guilty to those crimes, a theft offense or crime of violence with a one-year sentence was not considered an aggravated felony. 8 U.S.C. § 1101(a)(43)(F), (G) (1994).

 We review the merits of Brown's petition de novo. *Chrzanoski v. Ashcroft*, 327 F.3d 188, 191 (2d Cir.2003).

### A. Whether Brown's Due Process Rights Were Violated

 The right of a lawful permanent resident alien under the Fifth Amendment to due process of law in deportation proceedings is well established. *Reno v. Flores*, 507 U.S. 292, 306, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993); *Iavorski v. INS*, 232 F.3d 124, 128 (2d Cir.2000). At the "core" of due process "is the right to notice of the nature of the charges and a meaningful opportunity to be heard." *Choeum v. INS*, 129 F.3d 29, 38 (1st Cir.1997); see also *Kwong Hai Chew v. Colding*, 344 U.S. 590,

596–98, 73 S.Ct. 472, 97 L.Ed. 576 (1953). Congress, in enacting the immigration laws, has codified these rights by requiring that a Notice to Appear be served upon aliens in removal proceedings. 8 U.S.C. § 1229(a)(1) (Supp. IV 1998). The Notice to Appear must provide the "nature of the proceedings against the alien," the "legal authority under which the proceedings are conducted," the "acts or conduct alleged to be in violation of law," and the "charges against the alien and the statutory provisions alleged to have been violated." Id.; see also 8 C.F.R. § 3.15(b) & (c) (2003).[2] Moreover, at any time during the deportation proceedings, "additional or substituted charges of inadmissibility and/or deportability and/or factual allegations may be lodged by the [INS] in writing," and must be served on the alien. 8 C.F.R. § 240.10(e) (2003).[3]

■ Brown insists that the INS violated his constitutional right to due process, the deportation laws, and its own regulations when it relied on his 1996 conviction to challenge his contention that he was eligible for section 212(c) relief. He claims that the INS was required to provide him notice of the "charges" or "new factual allegations" against him. However, the 1996 conviction was neither a new "charge" nor a new "factual allegation" supporting a charge. The 1996 conviction was not presented as a substantive ground supporting the INS's contention that Brown could be removed. Rather, it was presented as a response to Brown's defense to removability—the contention that

he was eligible for section 212(c) relief. On this defense, Brown had the burden of proof, 8 C.F.R. § 240.8(d) (1997),[4] and had to at least have been aware of the possibility that the INS would try to rely on his 1996 conviction to bar him from relief. After all, the language of section 212(c), which Brown himself was asserting, makes clear by its terms that an aggravated felony conviction may act as a bar. And, at the time Brown was asserting his eligibility for section 212(c) relief at the resumed hearing before the immigration judge, Brown was already incarcerated for the 1996 conviction. Since the burden of proof was on Brown with respect to his 212(c) eligibility, we cannot say that he was not on notice of the possibility that his 1996 conviction could be used to refute the section 212(c) defense to removability.

Moreover, in such circumstances, we agree with the Fifth Circuit that "[t]here is no requirement, either statutory or constitutional, that all possible defenses or collateral remedies be explained" to the alien against whom the government is proceeding. *Aalund v. Marshall*, 461 F.2d 710, 712 (5th Cir.1972). Indeed, to require otherwise would prove "unmanageable" for the government, as the variety of defenses and strategies in removal proceedings is "innumerable." *Id.* Although in this case the government knew of Brown's defense before the hearing, and the proceedings were relatively straightforward, in other types of cases it would be virtually impossible for the government to foresee every possible defense and provide an alien, at

**2.** 8 C.F.R. § 3.15 has been redesignated as 8 C.F.R. § 1003.15. Aliens and Nationality; Homeland Security; Reorganization of Regulations, 68 Fed.Reg. 9824, 9830 (Feb. 28, 2003).

**3.** 8 C.F.R. § 240.10 has been redesignated as 8 C.F.R. § 1240.10. Aliens and Nationality; Homeland Security; Reorganization of Regu-

lations, 68 Fed.Reg. 9824, 9838–39. (Feb. 28, 2003).

**4.** 8 C.F.R. § 240.8 has been redesignated as 8 C.F.R. § 1240.8. Aliens and Nationality; Homeland Security; Reorganization of Regulations, 68 Fed.Reg. 9824, 9838–39. (Feb. 28, 2003).

the inception of the removal proceeding, notice of its response to each one.

Finally, the procedures already in place for removal proceedings afforded Brown adequate due process. Despite the lack of written notice, he was presented with the evidence at a hearing at which he was represented,[5] had a chance to respond and could have requested an adjournment if he felt he needed more time to consider the evidence and prepare a defense, 8 C.F.R. § 240.6 (2003).[6] Brown also had the opportunity to appeal. Given these procedures, we cannot say that the INS's failure to provide Brown with written notice of the 1996 conviction constitutionally prejudiced Brown. See *Mathews v. Eldridge*, 424 U.S. 319, 334–35, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

Brown argues, however, that *In re Fortiz–Zelaya*, 1998 WL 155546, 21 I. & N. Dec. 1199 (BIA Mar. 18, 1998), and *Choeum v. INS*, 129 F.3d at 37–40, require that the INS must rely on the same charge to bar section 212(c) eligibility as it relied upon in urging removal. But both *Fortiz–Zelaya* and *Choeum* are inapposite because their reasoning depends upon the language of section 440 of AEDPA, not section 212(c). Section 440 bars both judicial review and 212(c) relief for aliens who are "deportable" on the basis of having committed certain enumerated criminal offenses. AEDPA § 440(a), (d), 110 Stat.

1276–77. In *Fortiz–Zelaya*, the BIA held that in order for an alien to be considered "deportable" under section 440(d), and therefore barred from section 212(c) eligibility, the alien must be charged with and found deportable on the requisite ground of deportability enumerated in section 440. 21 I. & N. Dec. at 1201 n. 3; *id.* at 1204–10 (Filppu, Bd.Member, concurring). Similarly, in *Choeum*, the First Circuit held that the INS could not rely on grounds of deportability different from those charged in the Notice to Appear to cut off judicial review under section 440(a). 129 F.3d at 40. In sum, these cases, relying on the language in section 440 requiring an alien to be "deportable," see *id.* at 39, hold that the INS must rely on the same charges pleaded in the Notice to Appear in arguing the applicability of section 440. The reasoning of these cases is therefore inapplicable to the instant case, since the statutory bar in section 212(c) does not rely, as section 440 does, on whether an alien is "deportable," but on whether the alien has been "convicted."[7] Brown was convicted of first degree robbery and in September 1996 was sentenced for that crime. The INS's reliance on that conviction to refute Brown's section 212(c) eligibility without prior notice did not violate Brown's due process rights.

Nevertheless, in this case the INS knew that Brown was going to raise his section

---

**5.** Brown was represented throughout his immigration proceedings by an accredited representative who was not an attorney. Although there is no Sixth Amendment right to government-provided counsel in a deportation proceeding, the Due Process clause and the INA afford an alien the right to counsel of his own choice at his own expense. *Montilla v. INS*, 926 F.2d 162, 166 (2d Cir.1991); 8 U.S.C. § 1362. Non-lawyers are authorized to provide representation in deportation proceedings as "accredited" representatives. 8 C.F.R. §§ 292.1(a)(3), (4), 292.2(d) (2003); see 8 U.S.C. § 1229a(b)(4)(A).

**6.** 8 C.F.R. § 240.6 has been redesignated as 8 C.F.R. § 1240.6. Aliens and Nationality; Homeland Security; Reorganization of Regulations, 68 Fed.Reg. 9824, 9838–39. (Feb. 28, 2003).

**7.** It should also be noted that even if we believed that *Fortiz–Zelaya* or *Choeum* were applicable to the instant case, we would not be compelled to follow these decisions as they are only arguably persuasive authority in this circuit, not binding precedent.

212(c) eligibility as a defense, since the case was specifically remanded to the immigration judge to consider Brown's request for section 212(c) relief. In these circumstances, although notice was neither statutorily nor constitutionally mandated, it would have been better for the INS to have given Brown advance notice in writing that at the resumed hearing after remand it would rely on his 1996 conviction to challenge his section 212(c) defense to removability. See *Aalund,* 461 F.2d at 713.

**B. Whether Brown Is Statutorily Barred from Section 212(c) Eligibility**

Brown also contends that the statutory bar of section 212(c) does not apply to him because at the time he was initially ordered removed, he had not served at least five years on the 1996 conviction. He argues that 438 days of the 705 days between the time he was taken into custody after absconding and his sentencing on the 1996 conviction should be credited under New York law to his 1994 convictions, N.Y. Penal Law § 70.25(2–a); N.Y. Penal Law § 70.30, meaning that when he was initially ordered removed in June 2000, he had served less than five years on the 1996 conviction.

■ Brown also argues that his 1994 convictions cannot be taken into account for the purposes of barring his section 212(c) eligibility because at the time he pleaded guilty to those offenses they were not considered aggravated felonies under the Immigration and Naturalization Act. Under the version of the INA in force in 1994, a theft or robbery offense or crime of violence was considered an aggravated felony only if the term of imprisonment imposed for the offense was at least five years, INA § 101(a)(43), 8 U.S.C. § 1101(a)(43)(F), (G) (1994), and Brown received on his 1994 convictions a sentence

of one year and another concurrent sentence of one to three years. However, the definition was later amended by IIRIRA, §§ 321(a)(3), 322(a)(2)(A), 110 Stat. 3009–627–29, to include as aggravated felonies theft or robbery offenses or crimes of violence for which a one-year term of imprisonment was imposed. 8 U.S.C. § 1101(a)(43)(F), (G) (Supp. V 1999).

Preliminarily, it is not clear that we should review this claim because Brown failed to raise it before the immigration judge and on appeal. See *Drozd v. INS,* 155 F.3d 81, 91 (2d Cir.1998). In any case, the claim is without merit. Without getting into the arguably thorny issue of how to apportion the 438 of the 705 days between the 1994 convictions and the 1996 conviction, it is clear that under *Kuhali v. Reno,* 266 F.3d 93 (2d Cir.2001), discussed below, Brown's 1994 convictions can be taken into account in considering whether Brown is eligible for section 212(c) relief. When these convictions are considered along with the 1996 conviction, it is evident that, as set forth below, section 212(c)'s bar applies to Brown.

When Brown pleaded guilty to the 1994 charges of attempted robbery, those offenses were not considered aggravated felonies. However, *Kuhali* held that IIRIRA § 321, 110 Stat. 3009–627–28, which amended the provision defining "aggravated felon[ies]," applied by its clear terms retroactively. 266 F.3d at 111; *Drax v. Reno,* 338 F.3d 98, 108–09 (2d Cir.2003). But see *United States v. Ubaldo–Figueroa,* 347 F.3d 718, 729–34 (9th Cir.2003); *United States v. Leon–Paz,* 340 F.3d 1003, 1006–07 (9th Cir.2003). The amended provision defining the term "aggravated felony" closes with the statement: "Notwithstanding any other provision of law (including any effective date), the term ['aggravated felony'] applies regardless of whether the conviction was entered be-

fore, on, or after September 20, 1996." 8 U.S.C. § 1101(a)(43) (as amended by IIRI-RA, § 321(b)); see also *Kuhali*, 266 F.3d at 110. Thus, Congress "has directed with the requisite clarity" that amended INA § 101(a)(43) applies retroactively. *INS v. St. Cyr*, 533 U.S. 289, 316, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001); see also *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994).[8] The amended definition of aggravated felony, which includes theft offenses accompanied by a term of imprisonment of at least one year, 8 U.S.C. § 1101(a)(43)(G), and attempt to commit such an offense, id. § 1101(a)(43)(U), therefore encompasses Brown's 1994 convictions.[9]

▆ When these 1994 convictions are taken into account, it becomes evident that Brown was "convicted of one or more aggravated felonies and ha[d] served for such ... felonies a term of imprisonment of at least 5 years." INA § 212(c), 8 U.S.C. § 1182(c). The time an alien spends in prison during the course of a hearing, including up until the BIA issues a decision on a pending appeal, can be considered for the purposes of rendering an alien ineligible for section 212(c) relief. *Buitrago–Cuesta*, 7 F.3d at 296. At the time the BIA affirmed the immigration judge's order of removal in May 2001, Brown had served more than seven years in prison on his three convictions.[10] He is therefore statutorily ineligible for section 212(c) relief.

Furthermore, although the INS did not rely on the 1994 convictions at the resumed hearing before the immigration judge in February 2001, it could have. Under these circumstances, it would be futile and inefficient to vacate the removal order because upon remand, the government could present all of Brown's convictions in response to a claim of section 212(c) eligibility, and the result would be the same. See, e.g., *Envirocare of Utah, Inc. v. Nuclear Regulatory Comm'n*, 194 F.3d 72, 79 (D.C.Cir.1999) ("When 'there is not the slightest uncertainty as to the outcome of a proceeding' on remand, courts can affirm an agency decision on grounds other than those provided in the agency

---

8. The amendment at issue in this case differs from those considered in *St. Cyr* because it provides by its own terms that it applies retroactively. In *St. Cyr*, the Supreme Court held that the provisions at issue in that case "[did] not communicate with unmistakable clarity Congress' intention to apply its repeal of § 212(c) retroactively." 533 U.S. at 318, 121 S.Ct. 2271. Relying on the second part of the *Landgraf* analysis, which looks at whether retroactive application would affect settled expectations, the Court ruled that the AEDPA and IIRIRA amendments did not have retroactive effect for aliens who pleaded guilty before their enactment because retroactive application would alter settled expectations by attaching a new disability in such cases. See *id.* at 321–22, 121 S.Ct. 2271. Unlike the amendments at issue in *St. Cyr*, the amended definition of INA § 101(a)(43) at issue here explicitly has retroactive effect, foreclosing the need to analyze whether retroactive application upsets settled expectations. *Kuhali*,

266 F.3d at 111. Moreover, as the *Kuhali* court has pointed out, the amendment to INA § 101(a)(43) does not violate constitutional due process or the ex post facto clause. *Id.* at 111–12.

9. Brown contends that the § 1101(43) definitions, as amended by IIRIRA, do not apply to requests for section 212(c) relief because § 1101 applies only to "this chapter." Brown maintains that "this chapter" does not encompass section 212(c) because that provision was repealed by IIRIRA. We think it is clear, however, that Congress intended IIRI-RA's definitions to apply retroactively to all cases arising under the chapter's removal provisions, including those presenting claims for section 212(c) relief.

10. Even in November 2000, the time of the BIA's reversal and remand, Brown had served more than six years on his three convictions.

decision.") (quoting *NLRB v. Wyman–Gordon*, 394 U.S. 759, 766 n. 6, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969)); *NLRB v. Star Color Plate Serv.*, 843 F.2d 1507, 1510 (2d Cir.1988) (holding remand is not required when it would be " 'an idle and useless formality' ") (quoting *Wyman–Gordon*, 394 U.S. at 766 n. 6), 89 S.Ct. 1426; *Vista Hill Found., Inc. v. Heckler*, 767 F.2d 556, 566 n. 9 (9th Cir.1985) (same).

### III. Conclusion

We have reviewed all of Brown's claims and find them to be without merit. Accordingly, we affirm the order of the district court denying Brown's petition for writ of habeas corpus.