Markos PAPPAS, Plaintiff,

v.

**NEW HAVEN POLICE DEPARTMENT, et al., Defendants.**

**Civ. No. 3:98 CV 981(HBF).**

United States District Court, D. Connecticut.

Nov. 14, 2001.

Markos Pappas, pro se.

Thomas W. Ude, Jr., New Haven, CT, Martin S. Echter, New Haven, CT, for defendants.

## RULING

FITZSIMMONS, United States Magistrate Judge.

On March 14, 2001, this Court granted in part, and denied in part, a motion for summary judgment filed by the defendants which was addressed to all counts of the plaintiff's complaint. In that Ruling and Order, the Court noted that the plaintiff, Markos Pappas ("Pappas"), had asserted claims of municipal liability in his opposition papers without seeking leave to amend his complaint to actually assert such claims against the defendant City of New Haven (the "City"). Subsequent to

that ruling, on May 11, 2001, Pappas was granted leave to file a Second Amended Civil Rights Complaint which, for the first time, included a municipal liability count against the City (*see* Second Am. Compl., Count Six), and which is the operative complaint in this action.

On July 24, 2001,[1] the City moved for summary judgment on Count Six, claiming that Pappas "has failed to establish a prima facie case against the City" on the issue of municipal liability and, therefore, that the City is entitled to summary judgment. [Summ. J. Mem. at p. 3.] On September 14, 2001, Pappas filed his Opposition to the City's Motion for Partial Summary Judgment [Doc. # 63] ("Opposition") and Plaintiff's Local Rule 9(c)(2) Statement [Doc. # 64] ("9(c)(2) Statement"). The issue of whether summary judgment should enter in favor of the City on Count Six is currently pending before the Court. For the reasons set forth herein, the motion for summary judgment **[Doc. # 65]** is **DENIED.**

### *Facts* [2]

During July 1995, defendants Hale and Benedetto met several times with a confidential informant who told them about a large narcotics trafficking operation being conducted from the third floor apartment at 94 Foster Street in New Haven, Connecticut. The confidential informant said that the operation was run by three partners, Pappas and Ronald and Charles Fassett. He described Pappas and Ronald Fassett and their vehicles.

During the week of July 16, 1995, Hale and Benedetto conducted periodic surveillance of the apartment. They observed the vehicle identified by the confidential informant as belonging to Pappas parked in front of the building on several occasions, and observed the vehicle leave for short periods of time and return to a parking space in front of the building. The vehicle was registered to Hazel Pappas. Hale and Benedetto also observed Ronald Fassett on the white motorcycle identified by the confidential informant as belonging to Fassett.

Based upon the surveillance and information provided by the confidential informant regarding drugs and other items observed inside the apartment, Hale and Benedetto applied for a search warrant for the apartment as well as for Pappas and the Fassetts. On July 25, 1995, a state court judge issued a warrant to search the premises but denied it as to the search and seizure of Pappas or the Fassetts.

The warrant was executed on July 26, 1995. On route to the Foster Street apartment, Hale and Benedetto observed Ronald Fassett in the passenger seat of the car identified as belonging to Pappas.

---

1. Actually, on that date, the City filed a Memorandum in Support of Motion for Partial Summary Judgment [Doc. # 58] ("Summary Judgment Memorandum"), its Statement of Material Facts Not In Dispute [Doc. # 59] ("9(c)(1) Statement"), an Affidavit of Chief Melvin Wearing [Doc. # 60] ("Wearing Affidavit"), and an Affidavit of Sergeant Nicholas Proto [Doc. # 61] ("Proto Affidavit"), and failed to file an actual *motion* for summary judgment. Due to an apparent oversight, the actual motion [Doc. # 65] was not filed until October 23, 2001. For practical purposes, the court and parties have treated the motion as being filed on July 24, 2001. [*See, e.g.,*

Mem. in Opp. to Summ. J. ("Opp."), Sept. 14, 2001 (filed in response to Mem. in Support of Summ. J.).]

2. The facts are taken from the Court's March 14, 2001 Ruling and Order and, when relevant to the specific issues presently before the Court, from the parties' more recent submissions. Of course, to the extent the parties present conflicting facts and evidence, or to the extent there are any ambiguities, the Court resolves such disputes in favor of Pappas. (*See, infra,* "Standard of Review.")

The car was between one and three blocks away from the apartment.

Despite the judge's denial of a warrant to search or seize Fassett or Pappas, the officers, upon seeing those two individuals driving, stopped Pappas' vehicle, grabbed and handcuffed Pappas, pat-searched him, and placed him in the caged rear seat of a police car. The officers then transported Pappas to the Foster Street apartment, while refusing to answer Pappas' questions as to why he was being detained. Upon arriving at the apartment, Hale and Benedetto entered the building, while Defendant Rodriguez was assigned to watch Pappas and Fassett. Sometime thereafter, other officers removed Pappas from the back of the police car and placed him in a marked New Haven police prisoner conveyance van, which had recently arrived at the Foster Street location.

According to the defendants, after Pappas was placed in the prisoner van, Rodriguez checked the rear seat of the police car directly behind the spot where Pappas was sitting and discovered nineteen pink packets containing a white powdery substance later found to be cocaine. Pappas was then formally arrested on various narcotics charges stemming from the cocaine packets found in the police car and items discovered during the search of the apartment.

Subsequently, the charges relating to the cocaine found in the police car were nolled by the State's Attorney's Office. Pappas was tried and convicted, however, on federal drug conspiracy charges based, in part, on evidence found at 94 Foster Street. *See United States v. Pappas,* 199 F.3d 1324, 1999 WL 980957 (2d Cir.1999).

Pappas initiated this action on May 26, 1998. In its March 14, 2001 Ruling and Order, the Court denied the defendants' summary judgment motion with respect to all counts, except to the extent that Pap-

pas sought damages for the allegedly false charges based upon the cocaine purportedly discovered in the police car (because Pappas already benefitted from the nolle prosequi in state court) and to the extent Pappas alleged claims against the New Haven Police Department (because it is not an entity subject to suit under 42 U.S.C. § 1983). This summary judgment motion is addressed *only* to Pappas' recently added claims of municipal liability against the City.

*Standard of Review*

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *White v. ABCO Engineering Corp.,* 221 F.3d 293, 300 (2d Cir. 2000). A court must grant summary judgment " 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact....' " *Weinstock v. Columbia Univ.,* 224 F.3d 33, 41 (2d Cir. 2000) (quoting Fed.R.Civ.P. 56(c)). A dispute regarding a material fact is genuine if " 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Konikoff v. Prudential Ins. Co.,* 234 F.3d 92, 97 (2d Cir.2000) (quoting *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505). After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

When a motion for summary judgment is supported by documentary evidence and sworn affidavits, the nonmoving party must present evidence to demonstrate the existence of a genuine issue of material fact. A party may not rely on mere speculation, conjecture or unsupported allegations to overcome a motion for summary judgment. *See Bayway Refining Co. v. Oxygenated Marketing & Trading, A.G.*, 215 F.3d 219, 224 (2d Cir.2000).

The court "must first resolve all ambiguities and draw all inferences in favor of the non-moving party, and then determine whether a rational jury could find for that party." *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir.2000). "If reasonable minds could differ as to the import of the evidence, ... and [i]f ... there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment." *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 59 (2d Cir.1997) (internal quotation marks and citation omitted). In addition, where one party is proceeding *pro se*, the "court[ ] must construe *pro se* pleadings broadly, and interpret them 'to raise the strongest arguments that they suggest.'" *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir.2000)(quoting *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir.1996)).

"At the same time, the non-moving party must offer such proof as would allow a reasonable juror to return a verdict in his favor...." *Graham*, 230 F.3d at 38. Even a *pro se* party may not create a genuine issue of material fact by presenting unsupported statements or "sweeping allegations." *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 65 (2d Cir.1997). The non-moving party "cannot defeat a motion for summary judgment by relying on the allegations in his pleading, or conclusory statements, or on mere assertions that affidavits supporting the motion are not credible. The motion 'will not be defeated merely ... on the basis of conjecture or surmise.'" *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir.1996) (citations omitted); *see also* Fed.R.Civ.P. 56(e) (a non-moving party "may not rest upon the mere allegations or denials of the [non-moving] party's pleading").

### Discussion

The sole issue before the Court is whether the City has established that there are no genuine issues of material fact in dispute regarding Pappas' municipal liability count and that the City is entitled to judgment as a matter of law on that count. The Court believes that the City has not met that burden.

As an initial matter, it is not obvious from an initial reading of the Second Amended Complaint that Pappas even asserts a § 1983 claim against the City. Unlike the first five counts of the complaint, Count Six does not cite that section as the basis for the cause of action. The requirement of an affirmative link between an official municipal policy or decision and the alleged tort is specific to alleged § 1983 violations, as opposed to other potentially applicable causes of action. *See, e.g., Jonelis v. Russo*, 863 F.Supp. 84, 89 (D.Conn. 1994). However, because Pappas has not disputed the City's interpretation of Count Six and because Pappas has, in fact, defended the propriety of a § 1983 claim in response to the City's motion for summary judgment, the Court will, for the purposes of this ruling, assume that Count Six alleges a § 1983 violation on the part of the City.

 A municipality may be held liable as a "person" within the meaning of 42 U.S.C. § 1983. *See Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

To prevail against a municipality under § 1983, a plaintiff must show: (1) the existence of a municipal policy or custom, and (2) a causal connection between the policy and the deprivation of his constitutional rights. *See, e.g., Sarus v. Rotundo,* 831 F.2d 397, 400 (2d Cir.1987). A municipality may not, however, be held liable under § 1983 merely on the doctrine of *respondeat superior. See Monell,* 436 U.S. at 694, 98 S.Ct. 2018.

▪ As with any summary judgment motion, *see Bayway Refining,* 215 F.3d at 224, a plaintiff in a § 1983 municipal liability claim may not rely on mere conclusory allegations concerning the existence of a municipal policy, *see Snall v. City of New York,* No. 97–cv–5204 (ILG), 1999 WL 1129054, *7 (E.D.N.Y. Oct. 19, 1999). Thus, a plaintiff must proffer at least some credible evidence of the failure to train or supervise. *See, e.g., id. Cf., Sarus v. Rotundo,* 831 F.2d 397, 400–03 (2d Cir.1987).

▪ On the other hand, the Second Circuit has clearly held that liability need not be based on an explicitly stated rule or regulation and may, in fact, be premised on municipal inaction or omissions. *See, e.g., Villante v. Department of Corrections,* 786 F.2d 516, 519 (2d Cir.1986); *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983); *Turpin v. Mailet,* 619 F.2d 196, 201 (2d Cir.1980) ("We see no reason why an official policy cannot be inferred from the omissions of a municipality's supervisory officials, as well as from its acts"). *Cf. Fiacco v. City of Rensselaer,* 783 F.2d 319, 326 (2d Cir.1986) (municipality may be subjected to § 1983 liability on the basis that it tolerates unconstitutional acts by its employees). To support a claim based on inaction, it must be demonstrated that the municipality's failure to supervise or properly train its police force is so severe as to constitute "deliberate indifference" to a plaintiff's rights. *See City of Canton v.*

*Harris,* 489 U.S. 378, 388–89, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). The phrase "deliberate indifference" means more than "simple or even heightened negligence"; it involves a "conscious disregard" on the part of municipal employers for the consequences of their actions. *Board of the County Comm'rs of Bryan County v. Brown,* 520 U.S. 397, 407, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). The plaintiff must show that the need for more or better supervision to protect against constitutional violations was obvious. *See Vann v. City of New York,* 72 F.3d 1040, 1049 (2d Cir.1995); *Canton v. Harris,* 489 U.S. at 390, 109 S.Ct. 1197.

The essential dispute between Pappas and the City on the issue of municipal liability lies in the proper interpretation of an absence of documentation and the factual import of same. The City argues that Pappas' complaint is conclusory and that Pappas has failed to provide any specific responses during discovery. (*See* Summ. J. Mem. at p. 3.) Therefore, the City claims that Pappas has not established a prima facie case of municipal liability. (*See id.*) Moreover, the City has submitted an affidavit of the Chief of the New Haven Department of Police Services, averring that complaints of misconduct are investigated and that police officers are disciplined if necessary (*see* Wearing Aff. at ¶¶ 4–9), as well as an affidavit of Sergeant Nicholas Proto, averring that police academy training includes a minimum of sixty-eight hours of training in "Police and The Law," fifteen hours of which are devoted to the laws of arrests, and eighteen of which are devoted to search and seizure (*see* Proto Aff. at ¶ 10).

Pappas, on the other hand, denies only paragraph 2 of the City's 9(c)(1) Statement (which is hardly a statement of fact). Pappas admits that police officers are required to take training classes, that the Police

Officer Standards and Training Council ("POST") has established standards, that POST certifies instructors and monitors classes, that State law requires officers to be re-certified every three years, that the police academy includes at least sixty-eight hours of "Police and the Law," that the Internal Values and Ethics Unit ("IVEU") investigates complaints, that the IVEU forwards investigations to the Chief and Board of Police Commissioners, that over the course of years numerous police officers have been disciplined, and that criminal acts are referred to the appropriate prosecutor's office.

Instead, Pappas argues that none of this *general* training was sufficient to prepare the officers for the specific events that occurred in this case. Pappas argues that the narrow issues in this case—for example, the interrelationship between a judge's decision that no probable cause exists and several police officers' continued belief that it does—were not adequately taught to New Haven police officers. Pappas notes that, in response to his discovery requests seeking evidence of policies or education on this *specific* topic, the City provide at least seventy-eight "General Orders" that do not address this issue. (*See* Aff. of Markos N. Pappas, Feb. 26, 2001 ("Pappas Aff."), at pp. 12–17, ¶ 52(1)-(78).) Accordingly, Pappas seeks to use the City's failure to produce relevant documents, and/or the actual nonexistence of any such documents, as evidence that there is inadequate training in this area of the law.

The question before this Court, therefore, is whether Pappas' "showing" is sufficient to make out a prima facie case of a *custom of lack of training* and thus to overcome the City's summary judgment

motion. "To better focus upon the municipal policy, practice or custom of lack of training ..., the [courts in this Circuit] turn[ ] to [*Walker v. City of New York*, 974 F.2d 293, 297–98 (2d Cir.1992) ], where the Second Circuit set out a three tiered test to determine municipal liability where a policy of inadequate supervision and training existed." *Hogan v. Franco*, 896 F.Supp. 1313, 1321 (N.D.N.Y.1995).

■ To ultimately prevail on this claim, Pappas will first have to show that a policymaker "knows 'to a moral certainty' that [his/her] employees will confront a given situation." *Walker*, 974 F.2d at 297 (citing *Canton v. Harris*, 489 U.S. at 390, 109 S.Ct. 1197). In this case, the Court believes that a reasonable jury could find that a New Haven policymaker would "know to a moral certainty" that police officers will confront a situation where a judge has denied a warrant to search or seize an individual for whom such police officers subjectively believe probable cause to exist.

Pappas will next have to show that "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult, or that there is a history of employees mishandling the situation." *Id.* In this case, the City argues that Pappas' evidence of New Haven police officers mishandling situations—specifically newspaper articles—are not relevant to Pappas' claims, either because they postdate Pappas' arrest[3] or because they deal with other types of claims or misconduct. The issue of whether evidence of subsequent events may constitute evidence of a "history of employees mishandling the situation" does not seem to be as clear-cut as the

---

3. Pappas, as a pro se plaintiff, asks the Court to recognize that his incarceration has severely limited his investigation, investigative techniques and available resources. (*See* Pappas Aff. at ¶ 58.) Given the Court's decision on this factor, it is unnecessary to address the relevance of Pappas' incarceration to his ability to submit historical evidence.

City would have this Court believe. It seems plausible that such events would support a finding of continued inadequate training, even if it means the City was not on notice at the time. In any event, the second *Walker* factor is written in the disjunctive.

The second prong of the *Walker* test is satisfied if a plaintiff can ultimately show that the present situation presents the employee with a difficult choice of the sort that training or supervision will make less difficult. A choice may be considered difficult where "more than the application of common sense is required" or where, "although the proper course is clear, the employee has powerful incentives to make the wrong choice." *Id.* In this case, either standard might apply. For example, although the proper choice—obeying a neutral judge's orders and limitations—may be clear to lawyers, it takes more than an application of common sense to refrain from detaining a suspect subjectively "known" to be guilty. *Cf. id.* (discussing the example of whether to use deadly force in apprehending a fleeing suspect, and noting that such decision involves more than common sense; it involves the application of *Tennessee v. Garner,* 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)). Moreover, even if the proper decision is clear to police officers, those officers would have powerful incentives—preventing escape or, perhaps, even a belief that they would be protecting public safety—to make the wrong choice. In sum, the Court believes that a reasonable jury could find that situations similar to Pappas' situation present police officers with a difficult choice—namely, whether to let the target of an investigation drive away from an apartment being legally searched or to take steps potentially inconsistent with a judge's orders—and that training or supervision would make this choice less diffi-

cult. Accordingly, the second prong of the *Walker* test is satisfied.

Finally, to ultimately prevail on a municipal liability claim, Pappas "must show that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." *Id.* at 298 (citing *Canton v. Harris,* 489 U.S. at 390, 109 S.Ct. 1197). As a matter of law, the wrong choice—arresting an individual despite a judge's ruling that there is no probable cause to do so—will frequently, if not always, cause the deprivation of that citizen's constitutional rights. Accordingly, the third *Walker* prong is satisfied as well.

Because a reasonable jury could be convinced that the current *absence* of documentary evidence actually supports Pappas' position with respect to the three *Walker* prongs, Pappas may be able to show that the City's policymakers "should have known that inadequate training or supervision was 'so likely to result in the violation of constitutional rights, that the policymakers of the [C]ity can reasonably be said to have been indifferent to the need.'" *Walker,* 974 F.2d at 298 (quoting *Canton v. Harris,* 489 U.S. at 390, 109 S.Ct. 1197).

■ Of course, this Court is not deciding that Pappas is entitled to prevail on his municipal liability count. On the contrary, Pappas may indeed find it difficult to prevail on a theory largely unsubstantiated by affirmative tangible evidence. The Court merely holds that neither party is entitled as a matter of law to prevail on Count Six. The fact finder must eventually determine whether, as a factual matter, the police officers' training and supervision was inadequate. *Cf. Turpin,* 619 F.2d at 201 ("The issue of authorization, approval or encouragement is generally one of fact, not law"). Pappas has shown only that he is entitled to present this issue before a jury.

*Conclusion*

For the foregoing reasons, the City's Motion for Partial Summary Judgment [**Doc # 65**] is **DENIED**. This is not a recommended ruling. The parties consented to the exercise of the Court's jurisdiction by a magistrate judge and the case was transferred to the undersigned for all purposes on June 13, 2000. (*See* Doc. # 24.)

**SO ORDERED.**