

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-15-2009

# Jurado-Delgado v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-4495

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Jurado-Delgado v. Atty Gen USA" (2009). *2009 Decisions.* Paper 2030.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/2030

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD DISTRICT

_____

No. 06-4495/07-1924

_____

JIMMY JURADO-DELGADO,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES

Respondent.

_____

Petition for Review of an Order of the United States
Department of Justice Board of Immigration Appeals
(BIA No. A38-846-972)
Immigration Judge Walter Durling

_____

Argued July 22, 2008

Before:  SLOVITER, JORDAN, and ALARCON*, *Circuit Judges.*

_____

(Filed: January 15, 2009)

_____

George A. Terezakis  [ARGUED]
170 Old Country Road
Mineola, NY   11501
        *Counsel for Petitioner*

_____

    *Honorable Arthur L. Alarcon, Senior Circuit Judge of the United States Court of
Appeals for the Ninth Circuit, sitting by designation.

Jesse M. Bless   [ARGUED]
Edward J. Duffy
Ernesto H. Molina
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC   20044
       *Counsel for Respondent*

_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Jimmy Jurado-Delgado petitions for review of a final order of the Board of Immigration Appeals ("BIA").[1] He argues, among other things, that the BIA's determination that he is ineligible for cancellation of removal under 8 U.S.C. § 1229b is the result of an impermissible, retroactive application of that statute. In his view, the BIA, when determining whether he was statutorily eligible for cancellation of removal, was not entitled to take into account crimes that he committed prior to Congress's creation of that remedy. We disagree, and for the reasons that follow we will deny the petition for review.

I.     **Background**

Jurado-Delgado was born in Ecuador and was admitted to the United States as a permanent resident on September 15, 1985. Since that time, he has been no stranger to

_____

[1]Jurado-Delgado actually filed two petitions associated with the same case. As the petitions implicate the identical issues, we treat them as one for purposes of this opinion.

the criminal justice system.[2]  Of particular pertinence in this case, within seven years of his admission, he committed and was convicted of two crimes in Pennsylvania.  On June 25, 1991, he pleaded guilty to retail theft in violation of 18 Pa. Cons. Stat. Ann. § 3929(a)(1).  Then, on October 15, 1992, he pleaded guilty to making an unsworn falsification to authorities in violation of 18 Pa. Cons. Stat. Ann. § 4904(a).  He committed those crimes on March 27, 1991, and December 19, 1991, respectively.

Jurado-Delgado pleaded guilty to two more crimes in 1997.  On January 6, 1997, he was convicted of attempting to commit theft by unlawful taking in violation of 18 Pa. Cons. Stat. Ann. §§ 901, 3921(a).  Later that year, on June 10, 1997, he was convicted of conspiracy to commit retail theft, in violation of 18 Pa. Cons. Stat. Ann. § 903(a).

On October 27, 2001, the former Immigration and Naturalization Service ("INS")[3] served Jurado-Delgado with a notice to appear, charging him as removable[4] from the United States under 8 U.S.C. § 1227(a)(2)(A)(ii) for having been convicted of two crimes of moral turpitude that did not arise out of a single scheme of criminal misconduct.  The

---

[2]Five of Jurado-Delgado's convictions are relevant to the issues on appeal; however, the record indicates that his criminal record may be even more extensive.

[3]In 2003, the INS was abolished and the responsibility for enforcing the relevant immigration laws was transferred to the Bureau of Immigration and Customs Enforcement, which is within the Department of Homeland Security.  *See* Homeland Security Act of 2002, Pub L. No. 107-296, §§ 441, 471, 116 Stat. 2135, 2192, 2205 (2002).

[4]"The term 'removable' means ... in the case of an alien admitted to the United States, that the alien is deportable under [8 U.S.C. § 1227]."  8 U.S.C. § 1229a(e)(2).

3

notice to appear specified that the bases for the charge were Jurado-Delgado's 1997 convictions for attempting to commit theft and conspiracy to commit retail theft. The notice did not mention Jurado-Delgado's 1991 and 1992 convictions.

On December 22, 2005, while the removal proceedings were still pending, the Department of Homeland Security ("DHS") lodged an additional charge of removability under 8 U.S.C. § 1227(a)(3)(D), which makes removable any alien who has falsely represented himself to be a United States citizen for any purpose under federal law. The new charge stemmed from Jurado-Delgado's making false statements in an application for a United States passport in 2004.

Jurado-Delgado conceded before an Immigration Judge ("IJ") that he was removable either under 8 U.S.C. § 1227(a)(2)(A)(ii), for having been convicted of two crimes involving moral turpitude in 1997, or under 8 U.S.C. § 1227(a)(3)(D), for having falsely represented himself to be a United States citizen, but he requested cancellation of removal under 8 U.S.C. § 1229b(a). Section 1229b was enacted in 1996, became effective in 1997, and gives the Attorney General the authority to allow an otherwise removable alien to remain in this country if the alien meets certain statutory criteria. The DHS opposed Jurado-Delgado's application for cancellation of removal, arguing that his commission of two crimes in 1991 made him ineligible for that relief. On February 7, 2006, the IJ granted Jurado-Delgado's request for cancellation of removal. In the process, the IJ rejected the DHS's argument that Jurado-Delgado's 1991 crimes made him

4

statutorily ineligible. According to the IJ, those crimes could not affect his eligibility for cancellation of removal because the DHS had not charged Jurado-Delgado with being removable based on those crimes, either in the original notice to appear or in the document lodging the additional charge of removability.

The DHS appealed the IJ's decision to the BIA. On September 28, 2006, the BIA vacated the IJ's grant of cancellation of removal and ordered Jurado-Delgado removed from the United States. *In re Jurado-Delgado*, 24 I. & N. Dec. 29, 36 (B.I.A. 2006). It determined that Jurado-Delgado's 1991 and 1992 convictions were for crimes involving moral turpitude, which, because they were committed in 1991, within seven years of his admission, made him statutorily ineligible for cancellation of removal under 8 U.S.C. § 1229b(a). *Jurado-Delgado*, 24 I. & N. Dec. at 33-35. In arriving at its decision, it held that the DHS was not required to have noted the 1991 and 1992 convictions in the notice to appear or other charging document. *Id.* at 31-32. In addition, the BIA rejected Jurado-Delgado's argument that allowing those crimes to affect his eligibility for cancellation of removal amounted to an impermissible, retroactive application of the statute. *Id.* at 32. Jurado-Delgado filed a motion for reconsideration, which the BIA denied on February 27, 2007.

Jurado-Delgado now petitions for review in this Court. We have jurisdiction under 8 U.S.C. § 1252(a) to review the questions of law and constitutional claims raised in his petition. 8 U.S.C. § 1252(a)(1),(a)(2)(D).

5

## II.  Discussion[5]

### A.  Eligibility for Cancellation of Removal Under 8 U.S.C. § 1229b.

Jurado-Delgado does not challenge the determination that he is removable either under 8 U.S.C. § 1227(a)(2)(A)(ii), for having been convicted of two crimes involving moral turpitude in 1997, or under 8 U.S.C. § 1227(a)(3)(D), for having falsely represented himself to be a United States citizen in 2004.  Instead, he takes issue with the BIA's determination that his commission of two crimes in 1991 makes him ineligible for cancellation of removal under § 1229b.

As alluded to earlier, 8 U.S.C. § 1229b(a) gives the Attorney General the authority to cancel the removal of certain permanent residents who meet the statutory criteria.  It provides:

> The Attorney General may cancel removal in the case of an alien who is inadmissible or deportable from the United States if the alien–
> (1) has been an alien lawfully admitted for permanent residence for not less than 5 years,
> (2) has resided in the United States continuously for 7 years after having been admitted in any status, and
> (3) has not been convicted of any aggravated felony.

8 U.S.C. § 1229b(a).  In determining whether an alien has fulfilled the seven-year continuous residence requirement set forth in § 1229b(a)(2), it is necessary to consult

---

[5]We review the BIA's legal determinations *de novo* but will defer to its reasonable interpretations of the statutes it is charged with administering.  *Arca-Pineda v. Att'y Gen.*, 527 F.3d 101, 103 (3d Cir. 2008).

§ 1229b(d)(1), which states that a period of continuous residence is deemed to end when the alien receives a notice to appear or when the alien commits an offense that would make him inadmissible or removable under certain sections of the immigration statutes. More specifically, § 1229b(d)(1) provides:

> [A]ny period of continuous residence ... in the United States shall be deemed to end (A) ... when the alien is served a notice to appear under [8 U.S.C. § 1229(a)], or (B) when the alien has committed an offense referred to in [8 U.S.C. § 1182(a)(2)] that renders the alien inadmissible to the United States under [8 U.S.C. § 1182(a)(2)] or removable from the United States under [8 U.S.C. §§ 1227(a)(2) or 1227(a)(4)], whichever is earliest.

That section is known as the "stop-time rule."

On appeal, Jurado-Delgado makes two arguments regarding his eligibility for cancellation of removal. First, he argues that his 1991 crimes did not stop his accrual of time toward a period of seven years of continuous residence because those crimes did not render him inadmissible under the relevant sections of the immigration statutes. Second, he argues that, even if they did, the BIA's determination that those crimes made him ineligible for cancellation of removal resulted from a retroactive, and hence improper, application of 8 U.S.C. § 1229b. We reject both of those arguments.

### 1.    Crimes Involving Moral Turpitude

First we address whether the crimes Jurado-Delgado committed in 1991 are the type of crimes that stop the accrual of a period of continuous residence pursuant to § 1229b(d)(1). If they are, Jurado-Delgado is statutorily ineligible for cancellation of

7

removal under § 1229b(a) because he committed those crimes prior to attaining the requisite seven years of continuous residence in the United States.

Section 1229b(d)(1)(B) states that the commission of an offense that is "referred to" in 8 U.S.C. § 1182(a)(2) and that "renders the alien inadmissible to the United States" under that section stops time from accruing towards a period of continuous residence. Section 1182(a)(2), in turn, provides that an alien is inadmissible if he commits a crime involving moral turpitude. The statute states, in relevant part:

> Except as provided in [§ 1182(a)(2)(A)(ii)], any alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of ... a crime involving moral turpitude (other than a purely political offense) or an attempt or conspiracy to commit such a crime ... is inadmissible.

8 U.S.C. § 1182(a)(2)(A)(i).

In this case, the BIA determined that both of the crimes committed by Jurado-Delgado in 1991 were crimes involving moral turpitude, which rendered him inadmissible under 8 U.S.C. § 1182(a)(2)(A)(i).[6] On appeal, Jurado-Delgado challenges that

_____

[6]Section 1182(a)(2)(A)(ii) provides an exception for aliens who committed only one crime involving moral turpitude, if other statutory criteria are met. In determining that the stop-time rule applied to Jurado-Delgado, the BIA said that exception does not apply to him because Jurado-Delgado committed two crimes in 1991. Because we agree with the BIA that both of Jurado-Delgado's 1991 crimes involved moral turpitude, we express no opinion as to whether he would have been eligible for cancellation of removal had he committed only one crime involving moral turpitude before attaining seven years of continuous residence.

Although the BIA held that Jurado-Delgado's commission of two crimes involving moral turpitude in 1991 rendered him inadmissible under 8 U.S.C. § 1182(a)(2)(A)(i) and thus stopped his accrual of a period of continuous residence under § 1229b(d)(1), we note

determination.[7]  He first argues that his retail theft in violation of 18 Pa. Cons. Stat. Ann.

§ 3929(a)(1)[8] does not constitute a crime involving moral turpitude because, according to

Jurado-Delgado, the statute does not require that the store be permanently deprived of its

merchandise.  This hardly merits a response since it is perfectly clear that the statute is not

aimed at borrowing.  Any fair reading of the statute recognizes it is aimed at theft, and no

one disputes that theft involves moral turpitude.  *See, e.g., Briseno-Flores v. Att'y Gen.*,

492 F.3d 226, 228 (3d Cir. 2007) (recognizing that petty theft qualifies as a crime

involving moral turpitude); *Quilodran-Brau v. Holland*, 232 F.2d 183, 184 (3d Cir. 1956)

("It is well settled as a matter of law that the crime of larceny is one involving moral

turpitude regardless of the value of that which is stolen."); *In re Scarpulla*, 15 I. & N.

Dec. 139, 140-41 (B.I.A. 1974) ("It is well settled that theft or larceny, whether grand or

petty, has always been held to involve moral turpitude.").

---

that his commission of those two crimes also rendered him removable under § 1227(a)(2)(A)(ii), which was also sufficient to stop his accrual of a period of continuous residence under § 1229b(d)(1).

[7]We review *de novo* the BIA's interpretation of a state criminal statute, but defer to the BIA's reasonable interpretation of whether the elements of that statute involve moral turpitude.  *Knapik v. Ashcroft*, 384 F.3d 84, 88 (3d Cir. 2004).

[8]A person commits retail theft in violation of 18 Pa. Cons. Stat. Ann. § 3929(a)(1) if he "takes possession of, carries away, transfers or causes to be carried away or transferred, any merchandise displayed, held, stored or offered for sale by any store or other retail mercantile establishment with the intention of depriving the merchant of the possession, use or benefit of such merchandise without paying the full retail value thereof."

Next, Jurado-Delgado argues that his making an unsworn falsification to authorities in violation of 18 Pa. Cons. Stat. Ann. § 4904(a)[9] does not constitute a crime involving moral turpitude because the statute does not require that the false statement have been made under oath. Jurado-Delgado has not cited any authority for the proposition that deliberately lying to government officials is not a crime involving moral turpitude if it is not also perjury. Since § 4904(a) requires as one of its elements that the false statement be made "with intent to mislead a public servant in performing his official function," we agree with the BIA that a violation of that statute qualifies as a crime involving moral turpitude. *See, e.g., Rodriguez v. Gonzales*, 451 F.3d 60, 64 (2d Cir. 2006) (recognizing that "deceit and an intent to impair the efficiency and lawful functioning of the government" involves moral turpitude); *Padilla v. Gonzales*, 397 F.3d 1016, 1020 (7th Cir. 2005) ("[A]lmost all courts have held that intentionally deceiving the government involves moral turpitude." (quotation marks and citation omitted)); *In re Flores*, 17 I. & N. Dec. 225, 229 (B.I.A. 1980) (holding that a crime involves moral turpitude if it "impair[s] or obstruct[s] an important function of a department of the government by defeating its efficiency ... by deceit, graft, trickery, or dishonest means").

---

[9]A person commits unsworn falsification to authorities in violation of 18 Pa. Cons. Stat. Ann. § 4904(a) if, "with intent to mislead a public servant in performing his official function, he: (1) makes any written false statement which he does not believe to be true; (2) submits or invites reliance on any writing which he knows to be forged, altered or otherwise lacking in authenticity; or (3) submits or invites reliance on any sample, specimen, map, boundary mark, or other object which he knows to be false."

We therefore reject Jurado-Delgado's arguments and agree with the BIA that both of his 1991 crimes involved moral turpitude.

## 2. "Retroactivity" of 8 U.S.C. § 1229b

Next, Jurado-Delgado argues that the BIA's determination that his 1991 crimes bar cancellation of removal is the product of a retroactive application of 8 U.S.C. § 1229b. We disagree.

Questions of retroactivity arise "[w]hen a case implicates a federal statute enacted after the events in suit." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994). This is not such a case. At least one event independently giving rise to a charge of removability in this case occurred after Congress's enactment of 8 U.S.C. § 1229b, which became effective on April 1, 1997. *See* Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, §§ 304(a), 309(a), 110 Stat. 3009-546, 3009-594,-625 (Sept. 30, 1996). Specifically, in 2004, Jurado-Delgado falsely represented himself to be a United States citizen in an application for a United States passport, which resulted in him being deportable under 8 U.S.C. § 1227(a)(3)(D)(i) ("Any alien who falsely represents ... himself to be a citizen of the United States for any purpose or benefit under ... any Federal or State law is deportable.").[10] At the time Jurado-Delgado committed that offense, the law provided, as it does now, that a deportable alien

[10]After IIRIRA, proceedings for deciding the deportability or inadmissability of an alien are called "removal proceedings." *See* 8 U.S.C. § 1229a. An alien who has been admitted to the United States is removable if the alien is deportable under 8 U.S.C. § 1227. 8 U.S.C. § 1229a(e)(2).

11

is statutorily eligible for discretionary relief from removal under § 1229b(a) only if the alien has resided continuously in the United States for seven years without committing one of the offenses listed in § 1229b(d)(1)(B). 8 U.S.C. § 1229b(a)(2),(d)(1)(B). Because the BIA applied the law in effect at the time Jurado-Delgado committed the deportable offense, no question of retroactivity is implicated.[11]

Jurado-Delgado relies on the Supreme Court's decision in *INS v. St. Cyr*, 533 U.S. 289 (2001), to support his retroactivity argument, but the circumstances in that case were very different. In *St. Cyr*, the Supreme Court considered whether Congress's repeal, through IIRIRA, of former § 212(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(c) (repealed), which granted the Attorney General discretion to waive deportation in cases where an alien had accrued seven years of lawful residence in the United States, was impermissibly retroactive as applied to an alien who had pleaded guilty to a deportable crime in reliance on his ability to request a waiver under that section. The alien in *St. Cyr* was charged with being removable as a result of his having pleaded guilty in 1996 to an aggravated felony. 533 U.S. at 293. At the time of his plea, he was eligible for a waiver of deportation under INA § 212(c), but later that year Congress repealed § 212(c) as part of IIRIRA. *St. Cyr*, 533 U.S. 314-15. IIRIRA replaced § 212(c) with the new discretionary relief of cancellation of removal set forth in

_____

[11]Because Jurado-Delgado is independently removable for his having falsely represented himself to be a United States citizen in 2004, the portion of our discussion that addresses his retroactivity argument will focus on that charge of removability.

8 U.S.C. § 1229b, which is not available to an alien who has been convicted of an aggravated felony.  8 U.S.C. § 1229b(a)(3); *St. Cyr*, 533 U.S. at 297.  The alien in *St. Cyr* was placed in removal proceedings in 1997, after the repeal of INA § 212(c) became effective.  *St. Cyr*, 533 U.S. at 293.

The question confronted by the Supreme Court in *St. Cyr* was whether Congress's repeal of § 212(c) was impermissibly retroactive as applied to aliens who pleaded guilty to crimes that made them deportable but who otherwise would have been eligible for § 212(c) relief at the time of their plea.  The Supreme Court held that it was, after applying the two-step analysis set forth in *Landgraf*.[12]  The Court first determined that

---

[12]In *Landgraf*, the Supreme Court stated:

> When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, *i.e.*, whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would

13

Congress had not unambiguously directed that its repeal of § 212(c) should be applied to bar relief to aliens who pleaded guilty to deportable crimes prior to IIRIRA's effective date. *St. Cyr*, 533 U.S. at 320. It also concluded that the repeal of § 212(c) as applied to aliens who would have been eligible for § 212(c) waivers at the time of their pleas would have a retroactive effect, reasoning that those aliens almost certainly relied upon the likelihood of receiving discretionary relief in deciding whether to forgo their right to a trial. *Id.* at 321-25.

*St. Cyr* does not help Jurado-Delgado for at least two important reasons. First, and most significantly, unlike the alien in *St. Cyr*, Jurado-Delgado committed the act for which he is now being removed after Congress enacted the law that he alleges is impermissibly retroactive. Thus, unlike the alien in *St. Cyr*, who was being removed as the result of a conviction that occurred prior to Congress's repeal of INA § 212(c), Jurado-Delgado is being removed for an act that he committed in 2004, long after § 1229b took effect. Thus, there is no occasion to conduct a *Landgraf* analysis to determine whether § 1229b is impermissibly retroactive as applied to Jurado-Delgado, because this case does not "implicate[] a federal statute enacted after the events in suit." *Landgraf*, 511 U.S. at 280. We do not believe that a *Landgraf* analysis must be conducted merely because, in concluding that Jurado-Delgado was not eligible for the

operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

511 U.S. at 280.

14

new discretionary relief created by 8 U.S.C. § 1229b, the BIA took into account offenses committed by him prior to Congress's enactment of that statute. The analysis set forth in *Landgraf*, by its terms, applies only when a case "implicates a federal statue enacted after the events in suit," 511 U.S. at 280, and, as explained, Jurado-Delgado is being removed as a result of conduct that occurred after the effective date of § 1229b.

Second, unlike the alien in *St. Cyr*, Jurado-Delgado does not argue that Congress's repeal of INA § 212(c) operates retrospectively by destroying some ability to obtain relief in this case that he would have otherwise had. Nor would that argument help him here. Even if Jurado-Delgado had been charged with being removable as a result of his convictions for the 1991 crimes and he were then granted a § 212(c) waiver with respect to that charge,[13] the waiver would not have expunged the underlying convictions from his criminal record. *See Rodriguez-Munoz v. Gonzales*, 419 F.3d 245, 248 (3d Cir. 2005) ("As the BIA has explained ... '[t]he grant of a section 212(c) relief merely waives the finding of deportability rather than the basis of the deportability itself. Therefore, the crimes alleged to be grounds for deportability do not disappear from the alien's record for immigration purposes.'" (quoting *In re Balderas*, 20 I. & N. Dec. 389, 391 (B.I.A. 1991))). Accordingly, Jurado-Delgado's receipt of a § 212(c) waiver would not change the fact

---

[13]Under *St. Cyr*, § 212(c) relief remains available for aliens who pleaded guilty to deportable offenses at a time when they would have been eligible for a waiver under § 212(c). 533 U.S. at 326. We express no opinion as to whether Jurado-Delgado would be entitled to a § 212(c) waiver for a charge of removability based upon his convictions for the 1991 crimes.

15

that he is removable based on his having falsely represented himself as a United States citizen in 2004, nor would it change the fact that he is statutorily ineligible for cancellation of removal relief because of his commission of two crimes involving moral turpitude in 1991. *See id.* (holding that even if a charge of deportability based upon an alien's pre-IIRIRA conviction were waived under § 212(c), the pre-IIRIRA crime can still operate to bar cancellation of removal relief when an alien is removable because of a post-IIRIRA crime).

Jurado-Delgado nevertheless argues that it is the application of subsection (d)(1) of § 1229b, i.e., the stop-time rule, that has an impermissible retroactive effect on him. He asserts that, but for Congress's enactment of the stop-time rule, he would have accrued seven years of continuous residence in the United States and would be eligible for cancellation of removal relief under § 1229b(a). Thus, he says, we should ignore § 1229b(d)(1) – because it takes into account crimes he committed prior to its enactment and stops his accrual of a period of continuous residence – and hold that he is eligible for cancellation of removal under § 1229b(a). We do not think that the statute is a menu of choices, though. Jurado-Delgado cannot embrace the newly created relief and simultaneously reject Congress's classification of those entitled to relief. While he argues that Congress's enactment of § 1229b(d)(1) destroys his ability to obtain cancellation of removal under § 1229b(a), he ignores that both subsections of the statute were enacted at the same time as part of IIRIRA. In truth, he has never been eligible for cancellation of

16

removal under § 1229b(a) because § 1229b(d)(1) has always operated to limit the class of eligible aliens to those aliens who have continuously resided in the United States for seven years without committing a specified crime. Thus, we reject his argument that § 1229b(d)(1) operates retroactively to bar his ability to obtain relief under § 1229b(a).[14]

Our decision in this regard is at odds with the decision of the United States Court of Appeals for the Ninth Circuit in *Sinotes-Cruz v. Gonzales*, 468 F.3d 1190 (9th Cir. 2006), in which the court held that a permanent resident who was deportable based upon a post-IIRIRA conviction could obtain relief under 8 U.S.C. § 1229b(a), notwithstanding his commission of a disqualifying offense before he had acquired seven years of continuous residence. The court held that the stop-time rule was impermissibly retroactive insofar as it rendered the alien ineligible for cancellation of removal as the result of a guilty plea entered prior to the enactment of IIRIRA. *Id.* 1202-03. We respectfully decline to follow the Ninth Circuit's approach for the reasons already noted. In particular, we disagree with the decision to effectively excise the statutory restrictions set forth in subsection (d)(1) from the remainder of § 1229b. Subsections (a) and (d)(1) were enacted at the same time, and we see no basis for permitting an alien to obtain relief in the form of cancellation of removal under subsection (a) when he does not meet all of the contemporaneously-enacted statutory requirements for that relief.

---

[14]Of course, the applicability of the stop-time rule with respect to an alien's eligibility for suspension of deportation under former 8 U.S.C. § 1254 (repealed), a type of relief that existed prior to IIRIRA, requires a different analysis. *See, e.g., Briseno-Flores*, 492 F.3d at 229-30.

17

**B.     Insufficient Notice**

Finally, we address Jurado-Delgado's claim that, because his 1991 crimes were not alleged to be a basis for removability in either the 2001 notice to appear or in the 2005 document lodging an additional charge of removability, the BIA erred in relying on them in denying him cancellation of removal. He makes three arguments in support of that claim. First, he argues that his constitutional right to due process was violated as a result of the failure of any charging document to allege that his 1991 crimes rendered him ineligible for cancellation of removal. However, we join the several of our sister courts of appeals that have rejected the argument that an alien has a due process right to have listed in the notice to appear all crimes affecting the alien's eligibility for discretionary relief from removal. *See, e.g., Matovski v. Gonzales*, 492 F.3d 722, 738-39 (6th Cir. 2007) ("The petitioners enjoyed the right to know the charges of removability against them and to have those charges listed on Notices to Appear. However, the petitioners had no right to require the government to list every defense against their potential applications for discretionary relief."); *Salviejo-Fernandez v. Gonzales*, 455 F.3d 1063, 1066 (9th Cir. 2006) ("[D]ue process does not require inclusion of charges in the [notice to appear] that are not grounds for removal but are grounds for denial of relief from removal."); *Brown v. Ashcroft*, 360 F.3d 346, 351-52 (2d Cir. 2004) ("'[T]here is no requirement, either statutory or constitutional, that all possible defenses or collateral remedies be explained'

18

to the alien against whom the government is proceeding." (quoting *Aalund v. Marshall*, 461 F.2d 710, 712 (5th Cir. 1972)).

Jurado-Delgado next argues that the failure of any charging document to mention his 1991 crimes violated 8 U.S.C. § 1229(a)(1), which requires that aliens in removal proceedings be given written notice of "[t]he acts or conduct alleged to be in violation of law" and "[t]he charges against the alien and the statutory provisions alleged to have been violated." 8 U.S.C. § 1229(a)(1)(C),(D). There is no dispute, however, that Jurado-Delgado did receive written notice of the charges of removability against him and the facts the government relied upon to support those charges. He was expressly advised that he was removable under 8 U.S.C. § 1227(a)(2)(A)(ii) as a result of his two convictions in 1997 of crimes involving moral turpitude, and that he was removable under 8 U.S.C. § 1227(a)(3)(D) for having falsely represented himself in 2004 as a United States citizen. Jurado-Delgado's 1991 crimes were not relied on by the BIA as supporting a charge of removability. Instead, the BIA relied on those crimes in arriving at its conclusion that Jurado-Delgado was statutorily ineligible for discretionary relief from removal. We see nothing in 8 U.S.C. § 1229(a)(1) that requires a notice to appear or any other charging document to list all facts that may be detrimental to an alien's application for discretionary relief from removal.[15] *See Brown*, 360 F.3d at 351 (rejecting the argument

---

[15]For the same reason, we reject Jurado-Delgado's argument that the failure of a charging document to mention his 1991 crimes violated 8 C.F.R. § 1240.10(e), which permits the DHS to lodge additional charges of removability and factual allegations in writing at any time during the removal proceedings and requires the DHS to serve the

19

that 8 U.S.C. § 1229(a)(1) requires that an alien receive written notice of a conviction that is not relied upon as supporting a charge of removability but that affects statutory eligibility for discretionary relief).

Finally, Jurado-Delgado takes issue with the BIA's determination that 8 U.S.C. § 1229b(d)(1) does not require an alien to have been charged in the notice to appear with being inadmissible or removable for committing the particular offense that is invoked as the basis for barring him from seeking cancellation of removal. In response, the Attorney General asserts that the BIA's interpretation of § 1229b(d)(1) is entitled to deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). We need not reach the question of deference on this point, however, because we completely agree with the BIA's interpretation of the statute. *Cf. Edelman v. Lynchburg Coll.*, 535 U.S. 106, 114 (2002) ("Because we so clearly agree with the [agency], there is no occasion to defer and no point in asking what kind of deference, or how much."). To stop the accrual of a period of continuous residency, the only thing § 1229b(d)(1)(B) requires is an offense that "renders the alien inadmissible ... or removable." There is no requirement that the offense be the stated ground of removability. *Cf. Hussain v. Mukasey*, 518 F.3d 534, 537 (7th Cir. 2008) (rejecting the argument that the statutory bar in 8 U.S.C. § 1229b(c)(4) on cancellation of removal for aliens who are removable on grounds of terrorism requires that terrorism also be the stated ground of removal).

---

alien with a copy of those additional charges and allegations.

20

## III.   Conclusion

We have considered the remainder of Jurado-Delgado's arguments and find them to be without merit.  Accordingly, for the foregoing reasons, we will deny the petition for review.


SLOVITER, Circuit Judge, *concurring*

I join all of Judge Jordan's opinion with the exception of Part II.A.2., which addresses the retroactivity of the stop-time rule.  The majority abjures conducting a Landgraf analysis because it concludes that the application of the stop-time rule to Jurado-Delgado's case is not impermissibly retroactive, indeed not retroactive at all.  See Landgraf v. USI Film Products, 511 U.S. 244 (1994).  I disagree with the majority's analysis, but not with the final result.

The majority finds that this case does not "implicate[] a federal statute enacted after the events in suit," id. at 280, (a prerequisite for application of a Landgraf analysis) because "Jurado-Delgado is being removed for an act that he committed in 2004, long after § 1229b took effect."  Maj. Op. at 14.  The majority is correct that Jurado-Delgado's post-IIRIRA crimes render him removable (as do his earlier crimes), but it is only his pre-IIRIRA offenses that render him ineligible for cancellation of removal under the stop-time rule.  If the stop-time rule did not apply retroactively to crimes predating IIRIRA,

Jurado-Delgado would be statutorily eligible for cancellation of removal because his 1991 offenses would not have terminated his period of continuous presence.

The BIA based its rejection of Jurado-Delgado's request for cancellation of removal by applying the stop-time rule to the 1991 crimes. In re Jurado-Delgado, 241 I. & N. Dec. 29, 35 (B.I.A. 2006). Jurado-Delgado argues that the BIA erred in applying the stop-time retroactively, and that a correct application of Landgraf precludes such retroactivity. The government disagrees, and asks us to deny the Petition for Review.

The majority attempts to explain its failure to apply a Landgraf analysis where it states that the Landgraf analysis applies only when a case implicates a federal statute enacted after the events in suit. See Maj. Op. at 15. The stop-time rule fits that scenario in this case. It is contained in 8 U.S.C. § 1229b(d)(1) which was enacted in 1996 and became effective in 1997. The stop-time rule would interrupt Jurado-Delgado's accrual of seven years continuous presence when he committed the 1991 offenses if it applies retroactively to events before its enactment. Therefore, I believe we must deal with Landgraf, the decision of the Supreme Court that instructs us when statutes are to be applied retroactively.[1]

---

[1]Other courts that have addressed this question in depth have applied a Landgraf analysis. See, e.g., Martinez v. INS, 523 F.3d 365, 369-77 (2d Cir. 2008); Peralta v. Gonzales, 441 F.3d 23, 30-31 (1st Cir. 2006); Sinotes-Cruz v. Gonzales, 468 F.3d 1190, 1198-1203 (9th Cir. 2006); Pinho v. INS, 249 F.3d 183, 187-190 (3d Cir. 2001); Appiah v. INS, 202 F.3d 704, 708-09 (4th Cir. 2000); Henry v. Ashcroft, 175 F. Supp. 2d 288, 692-96 (S.D.N.Y. 2001).

In Landgraf, the Supreme Court established a two-part analysis for determining if a statute has an impermissibly retroactive effect: First, we must determine if Congress has given a clear indication that the statute is to be applied retroactively. 511 U.S. at 280. "If Congress has done so, of course, there is no need to resort to judicial default rules." Id. At the second step, we must consider whether retroactive application of the statute "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." Id.

Under step one of Landgraf, nothing in the stop-time rule clearly indicates that Congress unambiguously expressed that the rule be applied retroactively. Nothing in the statute indicates the appropriate temporal scope of the stop-time rule with respect to an alien in Jurado-Delgado's position. In contrast, the transitional rule expressly makes the stop-time rule applicable to pending cases involving suspension of deportation. IIRIRA § 309(c)(5), Pub. L. No. 104-208, 110 Stat. 3009-627 (1996).[2] However, that rule offers no guidance here because Jurado-Delgado would not have been eligible for suspension of deportation.[3] The transitional rule addressed only applications for suspension of

---

[2] This court has held that the application of the stop-time rule to transitional suspension of deportation cases is not impermissibly retroactive because Congress clearly intended that it be applied retroactively and doing so does not impair any vested rights. See Pinho v. INS, 249 F.3d 183, 188-89 (3d Cir. 2001). Many of our sister circuits have come to the same conclusion. See e.g., Tablie v. Gonzales, 471 F.3d 60, 63-64 (2d Cir. 2006); Peralta v. Gonzales, 441 F.3d 23, 30-31 (1st Cir. 1006).

[3] Jurado-Delgado does not argue that he would have been eligible for suspension of deportation; he argues that, under pre-IIRIRA law, he would have been eligible for § 212(c) relief (Appellant's Br. 38-39, Reply Br. 11).

23

deportation and was silent as to pending applications for § 212(c) waivers. Because Congress' intent to make the stop-time rule retroactive is ambiguous with respect to an alien in Jurado-Delgado's situation, we need to proceed to step two of Landgraf. See INS v. St. Cyr, 533 U.S. 289, 320 (2001).

Jurado-Delgado's claim fails under step two of Landgraf because he cannot show that the retroactive application of the stop-time rule to his 1991 crimes "would impair rights [he] possessed when he acted, increase [his] liability for past conduct, or impose new duties with respect to transactions already completed." Landgraf, 511 U.S. at 280.

"[W]hether a particular application is retroactive will depen[d] upon what one considers to be the determinative event by which retroactivity or prospectivity is to be calculated." Republic Nat'l Bank of Miami v. United States, 506 U.S. 80, 100 (1992) (Thomas, J., concurring) (internal quotation marks, citation, and emphasis omitted). Here, the relevant conduct was the commission of the crimes, as opposed to the subsequent guilty pleas. See Martinez v. INS, 523 F.3d 365, 373-76 (2d Cir. 2008) (holding that the commission of the crime is the determinative event for a Landgraf analysis of the stop-time rule).

As the majority notes, Jurado-Delgado committed the offenses underlying the 1991/92 convictions on March 27, 1991, and December 19, 1991. Jurado-Delgado arrived as a lawful permanent resident on September 15, 1985. Because he had not established seven years of continuous presence at the time of his commission of the

24

offenses leading to the 1991/92 convictions, his right to § 212(c) relief had not vested. Accordingly, the Landgraf analysis does not protect Jurado-Delgado from retroactive application of the stop-time rule because the 1996 enactment of the stop-time rule did not impair any rights that he possessed at the time of his offenses.